DON R. OVEREND *et al.*, Plaintiffs-Appellants, *v.* LAWRENCE GUARD *et al.*, Defendants-Appellees.

Fourth District   No. 17124

Opinion filed July 17, 1981.

Thomas M. Atherton, of Frings, Bagley, Atherton & Clark, of Pekin, for appellants.

G. Patrick Riley, State's Attorney, of Eureka, for appellees.

Mr. JUSTICE YONTZ delivered the opinion of the court:

This case is an effort to make more equal the tax burdens among the 17 townships in Woodford County. Plaintiff Overend owns realty and resides in and is township assessor of Worth Township; plaintiff Doty owns realty and resides in and is township assessor of Spring Bay Township. They filed their request for a writ of *mandamus* and an injunction February 17, 1981; the defendants are members of the Woodford County board of review.

Section 108a of the Revenue Act of 1939 (Ill. Rev. Stat. 1979, ch. 120, par. 589.1) requires county boards of review to equalize among townships tax assessments of nonfarm realty; this is done by analyzing at least 25 sales and appraisals in each township and then computing multipliers. Real estate tax rates are supposed to be applied against one-third the actual value of the property; when the assessed value is less than the actual value, as it often is, multipliers are used to increase the value to 33 1/3 percent.

The plaintiffs requested a writ of *mandamus* to compel the board of review to equalize assessments among the townships and an injunction to enjoin the board from adjourning; for once it adjourns, it loses jurisdiction over assessments for a year. The trial judge granted the plaintiffs' motion for a preliminary injunction February 20, 1981; by its own terms the injunction was to expire April 15, 1981. Both sides moved for summary judgment; to aid the trial court in ruling on the opposing motions, the parties filed a stipulation of facts. According to the stipulation, the board of review voted February 13, 1981, not to equalize the township assessments: "The minutes of this meeting reflect the decision not to equalize was made because 'there were not 25 sales in 12 of the 17 Townships in Woodford County.' " The Department of Revenue held a hearing December 19, 1980, and computed multipliers for the townships that had experienced 25 or more sales; the separate multipliers would raise the levels of assessments in those townships to 33 1/3 percent. The parties further stipulated that the board on review could have challenged the accuracy of the assessment and the multipliers but did not. Unless the board of review imposes township multipliers, the Department of Revenue will apply a county-wide multiplier of 1.1477. Finally, the parties stipulated that in collecting taxes for 1979 during 1980, the board of review adjourned July 15, 1980, closing its books at that time; bills for the 1979 real estate taxes were due October 8, 1980.

On April 10, 1981, the trial judge denied the petition for *mandamus* and granted the defendants' motion for summary judgment and denied the plaintiffs'. Also, the judge ordered the preliminary injunction to remain in effect only until it died by its own terms, on April 15, 1981. That same day, this court granted the plaintiffs' motion to extend the preliminary injunction.

Real estate taxes are supposed to be applied against one-third the actual value of property, but because the assessed value is generally lower than the actual value, multipliers are used to make up the differences. The defendants argue that they may choose between using one multiplier for all the nonfarm realty in Woodford County and using separate multipliers for each township. These separate multipliers would vary from district to district in inverse proportion to the level of assessment. Section 108a begins:

> "The board of review shall act as an equalizing authority. The board shall lower or raise the total assessed value of property in any assessment district within the county so that such property, other than property assessed in accordance with Section 20e of this Act [viz. farms], will be assessed at 33 1/3% of its fair cash value." (Ill. Rev. Stat. 1979, ch. 120, par. 589.1.)

This statute goes on to spell out the process for calculating multipliers,

requiring the examination of 25 transfers or appraisals in every district. With this information in mind, the county board of review "shall *annually* ascertain and determine the percentage relationship for each assessment district of the county, between the valuations at which locally-assessed property, other than [farms], is listed by assessors and the estimated 33 1/3% of the fair cash value of such property." (*Emphasis* added.) Multipliers are then computed to bring the assessed value up to one-third of the fair market value; assessments may not change more than 25 percent in one year, however.

If the board of review does not finish its work by a specified time or if its report to the Department of Revenue shows that the assessments have not been equalized, then the Department "shall direct, determine, and supervise the assessment for taxation of all real and personal property to the end that all assessments of property be made relatively just and equal as provided in section 130 of this Act." Section 130 (Ill. Rev. Stat. 1979, ch. 120, par. 611) grants the Department the power to supervise property assessments.

■■■ In unambiguous terms the statute requires boards of review to reassess property values annually; the concluding sentences create a backup for recalcitrant or overburdened boards. The defendants exploit the ambiguity by arguing that "shall," when used to explain the duties of the boards of review, means "may," that the word is directory rather than mandatory. This is incorrect; section 108a requires boards of review to equalize assessments by means of township multipliers. In *Hamer v. Lehnhausen* (1975), 60 Ill. 2d 400, 402, 328 N.E.2d 11, 12, the supreme court said:

> "Local boards are required to equalize intracounty assessments by local assessing officials among townships or assessment districts, or as between differing types of property."

Although the precise holding in *Hamer* concerned disparities in assessments among counties rather than among townships, its consideration of a parallel provision makes the statement quoted above extremely powerful dictum. Section 108a is mandatory; the defendants were not granted discretion to weigh costs and balance hardships and acquiesce in the Department of Revenue's county multiplier while ignoring the need for township multipliers. *Mandamus* is the appropriate means to compel public officials to comply with statutory or constitutional duties. (*Tedder v. Fairman* (1981), 93 Ill. App. 3d 948, 418 N.E.2d 91, *cert. imp.* (1981), S. Ct. Docket No. 54768; *People ex rel. Cheatham v. Board of Supervisors* (1939), 299 Ill. App. 575, 20 N.E.2d 904 (petitioner clearly and undeniably entitled to blind relief from county, but rebellious board refused to approve his request).) Furthermore, a trial court's misinterpretation of the statute or constitutional provision under which a petitioner seeks *manda-*

*mus* is not an act of discretion to which courts of review will defer. *Mid-America Television Co. v. Peoria Housing Authority* (1981), 93 Ill. App. 3d 314, 417 N.E.2d 210.

Although the trial court was wrong in saying that section 108a grants the defendants discretion, under the circumstances present here, we do not reverse. *Hamer* held that the Revenue Act and the constitution require equality of taxation but refused to compel the Department of Local Government Affairs, which at that time carried out the duties of the Revenue Act, to comply immediately:

> "We come, then, to the difficult question of a suitable remedy. The choice, in our judgment, lies between compelling the Department to recall the 1974 multipliers previously certified and to recompute them on a basis which would produce a uniform level of equalized assessed valuation for all counties at 50% of actual value [since reduced to 33 1/3%], and abandoning efforts to correct 1974 valuations in favor of accomplishing that result as to the 1975 taxes, payable in 1976." (60 Ill. 2d 400, 409, 328 N.E.2d 11, 16.)

The court chose the second course.

The opinion in *Hamer* was filed April 16, 1975; requiring the Department to comply immediately, "to recompute and recertify multipliers at this late date," would have greatly delayed tax collections during 1975. The plaintiffs here suggest that if multipliers are not ordered for all the townships, then they may easily be used in the five townships for which they were computed in December 1980. The remaining 12 townships would then be lumped together in a separate category and be subject to only the county multiplier. We decline to adopt this course for this year but are certain that all 17 townships will have separate equalizers next year. The duty to impose township multipliers is mandatory and the trial court should have granted the petition for *mandamus* on April 10, 1981, but at this late date the taxing bodies of Woodford County will suffer if the collection of taxes and distribution of funds is delayed this year by equalizing township assessments. Now that the doubts concerning the board's function and duties have been clarified, there is no reason for the board to disregard the statute in the future.

In view of this decision by this court, there is no need to entertain the question of the validity and admissibility of the affidavit of Ellwood Ladendorf.

Affirmed; injunction vacated.

TRAPP, P. J., and GREEN, J., concur.