UNITED STATES of America ex rel. Leon JOHNSON, Petitioner-Appellee,

v.

Kenneth McGINNIS, Respondent-Appellant.

No. 83–2940.

United States Court of Appeals, Seventh Circuit.

Argued Feb. 8, 1984.

Decided May 14, 1984.

As Amended June 6, 1984.

Stephen P. Carponelli, Carponelli, Krug, Adamski & Goodstein, Chicago, Ill., for petitioner-appellee.

Marcia L. Friedl, Office of Ill. Atty. Gen., Chicago, Ill., for respondent-appellant.

Before WOOD and POSNER, Circuit Judges, and REYNOLDS, Chief District Judge.*

HARLINGTON WOOD, Jr., Circuit Judge.

Petitioner filed for a writ of habeas corpus in federal district court alleging that the Illinois Prisoner Review Board violated his due process rights by failing to provide

him with an adequate statement of its reasons for denying him parole. The district court agreed and granted the writ. *United States ex rel. Johnson v. McGinnis,* 571 F.Supp. 270 (N.D.Ill.1983). On appeal, respondent contends that petitioner has failed to exhaust state court remedies as required by 28 U.S.C. § 2254(b) (1976) and that the district court erred in finding for petitioner on the merits. Because we agree with respondent that petitioner should have first sought relief on his due process claim in an Illinois mandamus action, we reverse.

### I.

Petitioner was convicted in Illinois of two counts of murder and sentenced on May 7, 1971, to 40 to 100 years imprisonment. On November 25, 1982, the Illinois Prisoner Review Board ("the Board") denied petitioner's fourth application for parole. Petitioner sought review of this denial by filing a *pro se* petition for a writ of habeas corpus in federal court on February 25, 1983, challenging the Board's rationale for his parole denial as violative of the due process and *ex post facto* clauses of the Constitution. As the basis for these claims, petitioner relied on two of our decisions interpreting the Illinois parole release statute, enacted in 1972 and effective January 1, 1973, which provides that parole can be denied if at least one of the three statutory criteria exists, and, that if denied, the denial must state the reasons for the Board's decision. Ill.Rev.Stat. ch. 38, §§ 1003-3-5(c) & (f) and 1003-5-1(b).[1] In

---

* The Honorable John W. Reynolds, Chief Judge of the Eastern District of Wisconsin, is sitting by designation.

1. Ill.Rev.Stat. ch. 38, § 1003-3-5(c) & (f) provides:
(c) The Board shall not parole a person eligible for parole if it determines that:
(1) there is a substantial risk that he will not conform to reasonable conditions of parole; or
(2) his release at that time would deprecate the seriousness of his offense or promote disrespect for the law; or
(3) his release would have a substantially adverse effect on institutional discipline.

(f) The Board shall render its decision within a reasonable time after [the] hearing and shall state the basis therefor both in the records of the Board and in written notice to the person on whose application it has acted. In its decision, the Board shall set the person's time for parole, or if it denies parole it shall provide for a rehearing not more than 12 months from the date of denial, however, the Board, on its own motion, may provide for a rehearing for an individual more frequently than once every 12 months or less frequently than once every 12 months but no less frequently than once every 3 years. If the Board shall parole a person, and, if he is not released within 90 days from the effective date

the first of our decisions, *Welsh v. Mizell*, 668 F.2d 328 (7th Cir.), *cert. denied*, 459 U.S. 923, 103 S.Ct. 235, 74 L.Ed.2d 186 (1982), we held that it was inappropriate for the Board to apply the second criterion (providing that parole had to be denied if the prisoner's release at that time "would deprecate the seriousness of his offense or promote disrespect for the law," Ill.Rev. Stat. ch. 38, § 1003–3–5(c)), since that was a marked departure from previous practice and would therefore violate the *ex post facto* clause.[2] Shortly thereafter, in *United States ex rel. Scott v. Illinois Parole and Pardon Board*, 669 F.2d 1185 (7th Cir.), *cert. denied*, 459 U.S. 1048, 103 S.Ct. 468, 74 L.Ed.2d 617 (1982), we found that the parole release statute created a legitimate expectation that an eligible inmate was to be paroled unless one of the three specified grounds for denial was found to exist and that the statute thus spawned a constitutional liberty interest entitled to due process protection. We held that to satisfy minimal due process requirements, the Board must provide the inmate with an adequate statement of reasons why his or her request for parole has been denied. Relying on these decisions, petitioner sought a new Board hearing and a constitutionally adequate statement of reasons if the Board should again deny him parole.

While the federal habeas corpus proceeding was pending, petitioner's parole application was again heard and denied on May 19, 1983. In its report on the denial of parole to petitioner, the Board checked the box on its official preprinted form indicating "Parole denied, continued to *5/84*" (the date having been written in on the blank

line). The words "Rationale to follow" also appeared on the form, and a separate sheet stating the rationale for the Board's decision was attached:

> The Prisoner Review Board panel, in addition to conducting a face-to-face interview with Mr. Johnson, carefully reviewed all the materials in his file including, but not limited to, the official statement of fact, institutional adjustment, and parole plans.
>
> Mr. Johnson is serving a 40–100 years sentence for the murder of two young men aged 14 and 17. According to the official statement of facts, both victims were executed in an alley, one by pistol wounds to the head and shotgun wound in the side, and the other by pistol wounds.
>
> Parole plans were noted by the Panel. Mr. Johnson has received no disciplinary reports since his last appearance before the Board in November, 1982. He has recently been assigned to the Officers' Kitchen.
>
> The Prisoner Review Board panel decides that further incarceration is needed to insure Mr. Johnson's continuing institutional stability and to therefore enhance the likelihood of his conforming to parole conditions and non-violent behavior in the free community. Parole is denied and case continued to May, 1984.

571 F.Supp. at 272–73.

Petitioner reasserted his constitutional challenge to this denial. He argued that the May 19th parole denial failed to comport with the due process requirements articulated in *Scott* and violated the *ex post*

---

of the order granting parole, the matter shall be returned to the Board for review.
Ill.Rev.Stat. ch. 38, § 1003–5–1(b) provides in relevant part:

> (b) ... If the Department or the Prisoner Review Board makes a determination under this Code which affects the length of the period of confinement or commitment, the committed person and his counsel shall be advised of factual information relied upon by the Department or Board to make the determination, provided that the Department or Board shall not be required to advise a person committed to the Juvenile Division [of] any

such information which in the opinion of the Department or Board would be detrimental to his treatment or rehabilitation.

**2.** We have since overruled *Welsh* in *Heirens v. Mizell*, 729 F.2d 449 (7th Cir.1984). In *Heirens*, we concluded that consideration of the seriousness of the crime in making parole decisions was *not* a departure from prior practice and thus did not result in an *ex post facto* change in the law. We need not discuss the impact of *Heirens* on petitioner's claims, however, because we do not reach the merits of those claims.

*facto* clause in light of *Welsh.* Petitioner moved to dismiss or for summary judgment. The motion was opposed by respondent on the ground that petitioner had not exhausted his state remedies (because he had not petitioned the Illinois courts for a writ of mandamus) and on the merits. The district court rejected respondent's arguments and found for petitioner. 571 F.Supp. at 279–82. The court's final amended order required the Board to conduct a parole hearing by December 16, 1983. Respondent appealed to this court and then moved the district court to stay its order. The motion to stay was carefully considered and denied by the district court on December 12, 1983. We granted an emergency stay on December 13, 1983, the day before rehearing was scheduled to take place.

## II.

■ The federal statute concerning habeas corpus jurisdiction on the federal courts requires that the district court dismiss a petition containing any claims that have not been exhausted in the state courts. *Rose v. Lundy,* 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982) (interpreting 28 U.S.C. § 2254 (1976) [3]). The statute does not merely define a procedural requirement for habeas corpus relief, but codifies the doctrine of comity, which " 'teaches that one court should defer action on causes properly within its jurisdiction until the courts of another sovereignty with concurrent powers, and already cognizant of the litigation, have had an opportunity to pass on the matter.' " *Rose v. Lundy,* 455 U.S. at 518, 102 S.Ct. at 1203 (quoting *Darr v. Burford,* 339 U.S. 200, 204, 70 S.Ct. 587, 590, 94 L.Ed. 761 (1950)).

The exhaustion requirement not only "serves to minimize friction between our federal and state systems of justice," *Duckworth v. Serrano,* 454 U.S. 1, 2, 102 S.Ct. 18, 19, 70 L.Ed.2d 1 (1981) (per curiam), but allows state courts to "become increasingly familiar with and hospitable toward federal constitutional issues." *Rose v. Lundy,* 455 U.S. at 519, 102 S.Ct. at 1203.

■ The exhaustion requirement of section 2254 refers only to state remedies still available at the time the federal petition is filed. *Engle v. Isaac,* 456 U.S. 107, 125 n. 28, 102 S.Ct. 1558, 1570 n. 28, 71 L.Ed.2d 783 (1982). Moreover, the statute provides an exception to the exhaustion requirement if "there is either an absence of available State corrective process or the existence of circumstances rendering such process ineffective to protect the rights of the prisoner." 28 U.S.C. § 2254(b) (1976). We have held that "[a] petition for a writ of mandamus in a state court must be exhausted where that proceeding was designed to protect the rights asserted [in the federal habeas corpus petition]." *Toney v. Franzen,* 687 F.2d 1016, 1021 (7th Cir.1982) (citations omitted). The issue here, then, is whether a state mandamus remedy is available to and must be exhausted by the petitioner.

In Judge Shadur's initial order of August 31, 1983,[4] he concluded that the mandamus remedy is available under Illinois law only to a petitioner who has established a clear right to have a public official perform an unquestioned duty. 571 F.Supp. at 273. Because of the nature of the mandamus remedy, Judge Shadur reasoned that if respondent asserted that mandamus were available to petitioner for purposes of the

---

**3.** Section 2254 provides in relevant part:

(b) An application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that the applicant has exhausted the remedies available in the courts of the State, or that there is either an absence of available State corrective process or the existence of circumstances rendering such process ineffective to protect the rights of the prisoner.

(c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

28 U.S.C. § 2254(b) & (c) (1976).

**4.** Judge Shadur's August 31, 1983, memorandum opinion and order and his October 5, 1983, memorandum opinion and order (discussed *infra*) are reported together at 571 F.Supp. 270.

exhaustion requirement, then as a matter of law respondent also was conceding that petitioner's claim had merit. Accordingly, Judge Shadur directed respondent to inform the court whether petitioner would be given a new parole hearing. Respondent later reported to Judge Shadur that he did not acknowledge the merits of petitioner's claim and believed he had not done so by suggesting that petitioner was required to pursue the mandamus remedy in state court. In light of respondent's "retreat[ ] from the logical consequences of his 'availability' argument," *id.* at 279, Judge Shadur went on to conclude that because petitioner's *ex post facto* claim would surely be denied by the Illinois courts [5] and because no "direct precedent" existed under Illinois law stating that mandamus would lie to remedy petitioner's due process claim, exhaustion was not required. *Id.* at 280.

█ We disagree with Judge Shadur's initial contention that there was an "inherent anomaly" in the advancement of respondent's legal argument that mandamus is "available" in the present circumstances. Certainly Judge Shadur was correct in pointing out the *logical* inconsistency in respondent's argument, but the *legal* issue is whether an Illinois court would entertain the merits of petitioner's claim in a mandamus proceeding, not whether it would grant relief. *United States ex rel. Bonner v. Warden,* 422 F.Supp. 11, 14 (N.D.Ill. 1976), *aff'd,* 553 F.2d 1091 (7th Cir.), *cert.*

*denied,* 431 U.S. 943, 97 S.Ct. 2662, 53 L.Ed.2d 263 (1977). Unless the state mandamus process "is so clearly deficient as to render futile any effort to obtain relief," *Duckworth v. Serrano,* 454 U.S. at 3, 102 S.Ct. 19, petitioner must exhaust this remedy.[6]

In deciding the question whether Illinois courts would cognize a mandamus action here, Judge Shadur relied on our analysis in a series of cases that considered whether the Illinois post-conviction statute [7] provided a "meaningful remedy" that had to be exhausted before we would evaluate constitutional claims involving a petitioner's state conviction proceedings in a federal habeas corpus action. Because Illinois courts strictly apply the doctrines of res judicata and waiver in post-conviction motions, unless an extreme situation involving "fundamental fairness" dictates that the rules be relaxed, we held that the post-conviction route must be exhausted only when there is a "direct precedent indicating that under the particular circumstances of a prisoner's case the ... doctrine[s] will be relaxed." *United States ex rel. Williams v. Brantley,* 502 F.2d 1383, 1386 (7th Cir.1974). "When there is no such direct precedent, this court finds that there is 'the existence of circumstances rendering such process ineffective to protect the rights of the prisoner.'" *Gray v. Greer,* 707 F.2d 965, 968 (7th Cir.1983) (quoting 28 U.S.C. § 2254(b)). Using this standard, Judge Shadur conclud-

---

**5.** We held in *Welsh* that prisoners denied parole by the Board did not need to present their *ex post facto* claims regarding application of the 1973 parole criteria to pre-1973 offenses to the Illinois courts, since the Illinois courts had clearly rejected such claims. 668 F.2d at 329–30. *See also supra* note 2.

**6.** Based on our reading of Illinois case law, discussed *infra,* we agree with respondent that mandamus, rather than a post-conviction hearing, appears to be the proper procedure for obtaining state review of the adequacy of the reasons for a parole denial, assuming the mandamus procedure is effective and available. The Illinois post-conviction hearing process is limited primarily to remedying alleged violations that occurred during the state trial proceedings. The post-conviction statute provides in relevant part:

> Any person imprisoned in the penitentiary who asserts that in the proceedings which resulted in his conviction there was a substantial denial of his rights under the Constitution of the United States or of the State of Illinois or both may institute a proceeding under this Article.

Ill.Rev.Stat. ch. 38, § 122–1. At a minimum, the Illinois post-conviction statute appears to be unavailable to a prisoner seeking relief other than an immediate and unconditioned release from the terms of his or her sentence. *United States ex rel. Isaac v. Franzen,* 531 F.Supp. 1086, 1090 (N.D.Ill.1982) (relying on *People ex rel. Johnson v. Pate,* 47 Ill.2d 172, 265 N.E.2d 144 (1970), *cert. denied,* 402 U.S. 976, 91 S.Ct. 1679, 29 L.Ed.2d 141 (1971)).

**7.** *See supra* note 6.

ed that because respondent had not come forward with direct precedent under Illinois law demonstrating that petitioner's due process claim regarding the Board's alleged misapplication of the statutory parole criteria would be entertained in a state mandamus action, "mandamus is indeed not an unexhausted and still-available remedy." 571 F.Supp. at 280.

■ We think Judge Shadur erred in analogizing the mandamus remedy sought here to the Illinois post-conviction remedy, and thus improperly required petitioner to provide a "direct precedent" for his position. As stated earlier, the reason we imposed the firm rule of finding a "direct precedent" before directing habeas corpus petitioners to exhaust the Illinois post-conviction remedy was because the Illinois courts, in interpreting the post-conviction statute in light of res judicata and waiver doctrines, had "rendered efforts to obtain post-conviction relief futile in many instances" such that there was "the near certainty" that no Illinois court would consider the constitutional claim unless there was direct precedent indicating they would. *Perry v. Fairman*, 702 F.2d 119, 121 (7th Cir.1983). Although Illinois mandamus is an unusual and extraordinary remedy, *People ex rel. Cantu v. School Directors*, 58 Ill.App.2d 282, 208 N.E.2d 301 (5th Dist.1965), there do not appear to be any doctrinal or procedural bars that would prevent the Illinois

courts from considering issues concerning the adequacy of reasons for a parole denial in a petition for a writ of mandamus. In fact, there is Illinois authority suggesting that mandamus is available in situations similar to the present case.[8] Specifically, Illinois courts have recognized that petitions for writs of mandamus directed against corrections officials may be an appropriate remedy for constitutional violations of parole procedures and prison conditions. In *Tedder v. Fairman*, 93 Ill.App.3d 948, 49 Ill.Dec. 447, 418 N.E.2d 91 (4th Dist.1981), the Illinois Appellate Court considered consolidated appeals of two inmates who sought to compel various officials of the Department of Corrections to act affirmatively to aid them in support of their rights and to protect them from oppressive conditions. One of the inmates sought to compel prison officials to provide him with adequate medical attention for certain psychological problems the inmate had developed; the other requested a transfer to another prison to avoid harassment and threats by fellow prisoners. The court held that both claims were improperly dismissed by the state trial court and gave the inmates leave to amend their petitions, since both included facts that, if properly pleaded, could state a cause of action under the cruel and unusual punishment prohibition of the eighth amendment. The court specifically noted that when prison officials exercise their discretionary

---

**8.** There is a clear split of authority in the Northern District of Illinois as to whether Illinois mandamus is a remedy that must be exhausted for due process claims challenging the Board's rationales for denying prisoners' parole requests. Taking a position similar to Judge Shadur's, Judge Aspen held in *United States ex rel. King v. McGinnis*, 558 F.Supp. 1343 (N.D.Ill. 1983), that no exhaustion was required because respondents had "not pointed to a single case demonstrating that Illinois courts would entertain an action in mandamus to redress federal constitutional violations in the context of parole denial." *Id.* at 1345. Most other authority, however, is to the contrary. One of the better discussions of why mandamus should be exhausted is given by Judge Roszkowski in *United States ex rel. Johnson v. Klincar*, 572 F.Supp. 924 (N.D.Ill.1983). *See also United States ex rel. Brown v. McGinnis*, No. 83 C 3454, (N.D.Ill. Feb. 28, 1984) (Getzendanner, J.); *United States ex*

*rel. Reese v. Illinois Prisoner Review Board*, No. 82 C 6353, (N.D.Ill. Oct. 25, 1983) (Plunkett, J.); *United States ex rel. Barksdale v. Thompson*, No. 83 C 1946 (N.D.Ill. April 14, 1983) (McGarr, C.J.); *United States ex rel. Mitchell v. McComb*, No. 82 C 2962 (N.D.Ill. March 7, 1983) (Decker, J.).

Judges Grady and Leighton originally adopted the position that Illinois mandamus need not be exhausted, but have since changed their views. *Compare United States ex rel. Williams v. DeRobertis*, No. 83 C 3679 (N.D.Ill. Oct. 6, 1983) (Grady, J.) *and United States ex rel. Sharp v. Klincar*, No. 82 C 7825 (N.D.Ill. Sept. 2, 1983) (Order) (Leighton, J.) *with United States ex rel. Hurst v. Harvey*, No. 79 C 1566 (N.D.Ill. March 21, 1980) (Grady, J.) *and United States ex rel. O'Connor v. MacDonald*, 449 F.Supp. 291 (N.D. Ill.1978) (Leighton, J.).

power in a way that deprives a prisoner of constitutional rights, mandamus is available as a remedy.

Similarly, in *People ex rel. Stringer v. Rowe*, 91 Ill.App.3d 134, 46 Ill.Dec. 582, 414 N.E.2d 466 (3d Dist.1980), the Illinois Appellate Court indicated a willingness to consider a prisoner's challenge to prison disciplinary proceedings that allegedly deprived him of good time credits. The *pro se* challenge, as interpreted by the appellate court, claimed that the procedures for hearing disciplinary cases under the administrative regulations failed to satisfy minimal due process requirements. Although the action was brought as a petition for declaratory judgment, the court assumed jurisdiction without discussing it, and by reaching the merits of petitioner's claim implicitly recognized the right of prisoners to attack in state court the sufficiency of prison disciplinary proceedings on constitutional grounds.

Shortly after *Stringer*, another Illinois appellate court directly addressed the jurisdictional question not explicitly answered in *Stringer*. In *Taylor v. Franzen*, 93 Ill. App.3d 758, 48 Ill.Dec. 840, 417 N.E.2d 242, *aff'd on rehearing*, 93 Ill.App.3d 1152, 51 Ill.Dec. 645, 420 N.E.2d 1203 (5th Dist. 1981), the appellate court expressly determined that mandamus is the appropriate remedy to compel prison officials to comply with the disciplinary hearing procedures provided by the administrative regulations. The court found it unnecessary to review whether the alleged violations of the administrative regulations constituted a violation of due process, however, since it rested its decision on a finding that the Department of Correction's failure to comply with the regulations, which under Illinois law the Department was bound to follow, itself entitled the prisoner to relief. In explaining its decision to decline review of the constitutional issue, the court stated:

> While disregard of an administrative regulation by an agency may constitute a

due process violation (*United States ex rel. Accardi v. Shaughnessy* (1954), 347 U.S. 260, 74 S.Ct. 499, 98 L.Ed. 681), the process that is due under a state agency's administrative rules and the minimum constitutional safeguard required by the fourteenth amendment's due process clause are not always identical. (*Durso v. Rowe* (7th Cir.1978), 579 F.2d 1365.) Thus, we address petitioner's allegations that applicable regulations were violated independent of his federal constitutional claims.

48 Ill.Dec. at 761, 417 N.E.2d at 245.

In our view, *Taylor* and other Illinois cases that rest their decisions exclusively on state law grounds and pretermit consideration of a mandamus petitioner's due process claims, *see, e.g., People ex rel. Tucker v. Kotos*, 68 Ill.2d 88, 11 Ill.Dec. 295, 368 N.E.2d 903 (1977) (mandamus will lie to enforce accused parole violator's right to a reasonably prompt final revocation hearing); *People ex rel. Abner v. Kinney*, 30 Ill.2d 201, 195 N.E.2d 651 (1964) (mandamus is appropriate to compel the Board to hold a hearing to determine a prisoner's eligibility for parole), do not suggest that mandamus is an improper procedure for raising a prisoner's constitutional claims relating to the adequacy of the reasons given for a parole denial. *See United States ex rel. Isaac v. Franzen*, 531 F.Supp. at 1092. These cases merely reflect the general policy of the Illinois courts of deciding constitutional questions only when necessary to a disposition of the case. *See Aurora East Public School District v. Cronin*, 92 Ill.App.3d 1010, 48 Ill. Dec. 88, 415 N.E.2d 1372 (2d Dist.1981). As evidenced by *Tedder* and *Stringer*, there is no reason to suspect that Illinois courts will not address constitutional due process claims in mandamus actions when there are no state regulations that provide due process protection greater than that required by the fourteenth amendment,[9] *see also Overend v. Guard*, 98 Ill.App.3d

---

9. As Judge Shadur observed, it is unclear whether there are specific state regulations in this case that would mandate compliance with the due process requirements set forth in *Scott*, 669

F.2d at 1190–91 (Board must inform eligible prisoner what in his record warranted parole denial and why). 571 F.Supp. at 279 n. 2.

441, 53 Ill.Dec. 940, 424 N.E.2d 731 (4th Dist.1981) ("*Mandamus* is the appropriate means to compel public officials to comply with statutory *or constitutional* duties" [citing *Tedder v. Fairman*], 53 Ill.Dec. at 942, 424 N.E.2d at 733 (emphasis added)), and cases such as *Tucker, Abner,* and *Taylor v. Franzen* suggest that a petition for a writ of mandamus would be the proper procedure to compel the Board to provide a constitutionally adequate statement of reasons for a parole denial.

There is another reason why we think application to the state courts is appropriate in this case. Unlike the constitutional violations alleged in most federal habeas corpus petitions, the due process claim asserted here has not been placed before or passed on by any Illinois court. Considerations of comity are therefore especially strong here, since state courts should have the first opportunity "to mend their own fences." *Engle*, 456 U.S. at 129, 102 S.Ct. at 1572. In addition, it is conceivable that the Illinois courts may resolve the issue here on the basis of the state statute establishing the parole criteria without having to resort to the Constitution. *But see supra* note 9.

### III.

For the reasons stated, the district court is reversed. Petitioner's petition for a writ of habeas corpus is denied without prejudice and with leave to reinstate the petition once petitioner has exhausted his state remedies by seeking a writ of mandamus in the state courts.