**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 23-1047
_____

JAMAL MORTON,
                    Appellant

v.

DIRECTOR VIRGIN ISLANDS BUREAU OF
CORRECTIONS
_____

On Appeal from the District Court
of the Virgin Islands
(D.C. No. 3-20-cv-00031)
District Judge: Honorable Robert A. Molloy
_____

Argued December 13, 2023

Before: HARDIMAN, KRAUSE, and RENDELL,
*Circuit Judges.*

(Filed: August 5, 2024)

Joseph A. DiRuzzo, III
Daniel M. Lader [ARGUED]
Margulis Gelfand DiRuzzo & Lambson
401 E Las Olas Boulevard
Suite 1400
Ft. Lauderdale, FL 33301
        *Counsel for Appellant*

Ian S.A. Clement [ARGUED]
Office of Attorney General of Virgin Islands
Department of Justice
34-38 Kronprindsens Gade
GERS Complex, 2nd Floor
St. Thomas, VI 00802
        *Counsel for Appellee*

———————————

OPINION OF THE COURT

———————————

KRAUSE, *Circuit Judge*.

In the normal course, federal courts do not entertain habeas petitions before a prisoner exhausts his state court remedies.[1]   But there comes a point when justice delayed

---

[1] We use "state court remedies" and "territorial court remedies" interchangeably, as U.S. law provides that, with respect to the Virgin Islands, "[t]he relations between the courts established by the Constitution or laws of the United States and the courts established by local law with respect to . . . the issuance of writs of habeas corpus . . . shall be governed

becomes justice denied, so when inordinate delay has stymied a petitioner's state case, we will excuse the exhaustion requirement unless the government can adequately justify the holdup.

Here, Appellant Jamal Morton sought territorial habeas relief after being convicted in Virgin Islands Superior Court. Six years later and despite Morton's myriad attempts to move the litigation along, his petition sat dormant, so he turned to the federal courts and filed a new habeas petition in the District of the Virgin Islands. Because the District Court dismissed Morton's petition for failure to exhaust territorial court remedies without first asking the Government to explain the territorial court's inordinate delay, we will vacate the Court's order of dismissal and remand for it to consider any proffered justifications and proceed accordingly.

## I.     Factual and Procedural Background

### A.     Morton's Conviction and Territorial Court Proceedings

Morton was convicted in the Virgin Islands in 2012 of second-degree murder and various firearm offenses and was sentenced to fifty years in prison, with a mandatory minimum of fifteen years. On direct appeal, the Virgin Islands Supreme Court affirmed his conviction.

---

by the laws of the United States pertaining to the relations between the courts of the United States . . . and the courts of the several States in such matters and proceedings." 48 U.S.C. § 1613.

Morton then commenced the collateral review in the Superior Court of the Virgin Islands that remains pending and forms the backbone of this appeal. In his 2014 territorial habeas petition, Morton raised twenty claims, including for violations of his Fifth Amendment right against double jeopardy and his Sixth Amendment right to effective assistance of counsel. Receiving no answer from the Government, Morton asked the Court to set a briefing schedule. But the Court also did not respond, so in early 2015, Morton moved for the entry of default judgment, explaining that the Government's response was past due and that he was therefore entitled to relief. Over two weeks later, the Government filed an out-of-time motion to dismiss Morton's petition.

With that motion still pending, in early March 2015, Morton filed his initial Rule 26 disclosures and a request for production, and he and the Government stipulated that the Government would withdraw its motion to dismiss. Also in early March 2015, the Government filed a response to Morton's July 2014 petition and a motion to file that response out of time, on the ground that previous counsel had erred but that a new attorney would now represent the Government. Later that month, and still lacking guidance from the Court, Morton served the Government with his own document discovery. The next month, Morton moved to strike the affirmative defenses in the Government's response to his petition and sought judgment on the pleadings, asserting that the Government's response failed to admit or deny each of his allegations. In May, Morton served his first set of interrogatories on the Government. Three months later, in August, the Government moved to "deny discovery," contending that Morton improperly served the interrogatories without first seeking leave from the Court.

Although Morton filed a timely response, no ruling was forthcoming. Instead, months of silence passed. So again, Morton took the initiative. In November 2015, Morton asked the Court to hold a status conference "to address the timely resolution of this case." D. Ct. ECF No. 11-1, at 135. The Court did not respond. Many months later, in September 2016, he again sought a status conference, but again, his request was met with silence.

Finally, in April 2017—nearly three years after Morton filed his petition—the Superior Court scheduled a status conference, which was held in July 2017. The Court's record of the proceeding indicates only that the Court said it would issue a "Writ" and file a "Scheduling Order for the Traverse and Return," in addition to "an order on the respondents' Motion for Discovery." *Id.* at 163–64. Yet none of those things happened. Instead, the case continued to lie dormant for months that turned into years.

## B. The Proceedings Below

Exasperated with the inaction of the territorial court, Morton turned to the federal system. In April 2020, Morton filed his federal habeas petition in the U.S. District Court of the Virgin Islands, where he raised the same twenty claims as in his territorial petition. As it turned out, however, the Government never had occasion to respond because before it was properly served, the District Court sua sponte dismissed the petition without prejudice, holding that Morton had failed to exhaust his territorial court remedies. It reasoned that, regardless of the Government's role in or the Superior Court's reasons for allowing the case to languish, Morton had

5

"contributed to the delay" in the adjudication of his claims by not moving to enforce the Superior Court's "oral order"[2] or filing a writ of mandamus with the Virgin Islands Supreme Court, and Morton's failure to take those affirmative steps rendered it "inappropriate" for a federal court "to take the extraordinary step of deeming state court remedies exhausted." *Morton v. Testamark*, No. 20-cv-0031, 2022 WL 17669172, at *8 (D.V.I. Dec. 14, 2022). This appeal followed.

## II.    Jurisdiction and Standard of Review

The Virgin Islands District Court had jurisdiction under 28 U.S.C. § 2254(a) and 48 U.S.C. § 1612(a). *See Walker v. Gov't of the V.I.*, 230 F.3d 82, 86 (3d Cir. 2000). We have jurisdiction under 28 U.S.C. §§ 1291 and 2253(a).[3] *See id.* at

---

[2] As the Superior Court indicated only an intent to issue an order, but not the content, it is unclear what order could be enforced.

[3] The Government contends that we lack jurisdiction to hear this case because the District Court's dismissal of Morton's habeas petition is not an appealable "final decision" or "final order" under 28 U.S.C. §§ 1291 and 2253. In its view, because a dismissal without prejudice does not necessarily end a petitioner's habeas litigation but theoretically sends it back to territorial court, such a dismissal does not "end[] the litigation on the merits." *Hagan v. Rogers*, 570 F.3d 146, 151 (3d Cir. 2009) (quoting *Welch v. Folsom*, 925 F.2d 666, 668 (3d Cir. 1991)).

The Government cites no cases that support this proposition, and we reject it. This Court regularly treats such dismissals as final and appealable, *see, e.g.*, *Crews v. Horn*,

89.  Because the District Court dismissed the petition without conducting an evidentiary hearing, we exercise plenary review. *McMullen v. Tennis*, 562 F.3d 231, 236 (3d Cir. 2009).

## III.    Discussion

### A.    The Exhaustion Requirement

Usually, "a federal court may not entertain a petition for a writ of habeas corpus unless the petitioner has first presented each of his claims to the state's highest tribunal."  *Lee v. Stickman*, 357 F.3d 338, 341 (3d Cir. 2004); *see also Rose v. Lundy*, 455 U.S. 509, 515–16 (1982).    This exhaustion requirement, which is codified at 28 U.S.C. § 2254(b)(1), forbids the federal courts from granting a writ of habeas corpus unless it appears that (1) the petitioner has "exhausted the remedies available in the courts of the State," (2) "there is an absence of available State corrective process," or (3) "circumstances exist that render such process ineffective to

---

360 F.3d 146, 147, 149 (3d Cir. 2004); *Lines v. Larkins*, 208 F.3d 153, 155, 159 n.6 (3d Cir. 2000), as do all of our sister circuits, *see Lauderdale-El v. Ind. Parole Bd.*, 35 F.4th 572, 578–80 (7th Cir. 2022) (listing cases).  And with good reason. As Judge Easterbrook explains, although a dismissal "without prejudice" sometimes means "there's more to do in this court," it more typically means "you should be in some other tribunal." *Carter v. Buesgen*, 10 F.4th 715, 724 (7th Cir. 2021) (Easterbrook, J., concurring).  This latter statement is what a district court means when it dismisses a habeas petition for failure to exhaust state remedies, and thus, like a dismissal for lack of venue, personal jurisdiction, or subject matter jurisdiction, such a dismissal is final and appealable.  *Id.*

protect" the petitioner's rights. The petitioner "carries the burden of proving exhaustion of all available state remedies." *Parker v. Kelchner*, 429 F.3d 58, 62 (3d Cir. 2005) (quoting *Lambert v. Blackwell*, 134 F.3d 506, 513 (3d Cir. 1997)).

This exhaustion requirement is not jurisdictional, but rather "a matter of comity." *Lee*, 357 F.3d at 341. Thus, when "inexcusable or inordinate delay by the state in processing claims for relief . . . has rendered the State remedy ineffective to protect the rights of the petitioner, we have excused exhaustion." *Wojtczak v. Fulcomer*, 800 F.2d 353, 354 (3d Cir. 1986); *see also Hankins v. Fulcomer*, 941 F.2d 246, 250 (3d Cir. 1991) (explaining that "the principle of comity weighs less heavily" when a state court "has had ample opportunity to pass upon [a] matter and has failed to sufficiently explain its . . . delay"). But while inordinate delay is a threshold requirement for excusing exhaustion, it "does not automatically excuse the exhaustion requirement"; instead, it "shift[s] the burden to the state to demonstrate why exhaustion should still be required." *Lee*, 357 F.3d at 341. That burden is "difficult to meet." *Story v. Kindt*, 26 F.3d 402, 405 (3d Cir. 1994).

We consider all relevant factors in evaluating whether delay has been inordinate, but three are of particular importance. The first is the length of delay. In the past, we have held that delays as "short" as 33 months were so long that they supported excusing exhaustion. *See Wojtczak*, 800 F.2d at 354 (33 months); *see also United States ex rel. Geisler v. Walters*, 510 F.2d 887, 891 (3d Cir. 1975) (40 months); *United States ex rel. Senk v. Brierly*, 471 F.2d 657, 660 (3d Cir. 1973) (44 months).

Second, we consider "the degree of progress made in state court." *Lee*, 357 F.3d at 342. Ongoing progress may counsel against excusing exhaustion, even when there has been substantial delay. *Compare, e.g.*, *Cristin v. Brennan*, 281 F.3d 404, 411 (3d Cir. 2002) (holding that a 27-month delay did not render relief "effectively unavailable" where the state court had held oral argument and scheduled an evidentiary hearing over the months), *with Story*, 26 F.3d at 406 (excusing exhaustion where the state court "neglected [the petitioner]'s case for almost eight years" even though the court had taken some action after it received notice of the federal petition). And as a general matter, district courts are expected to "stay their consideration of habeas petitions when previously stalled state proceedings resume." *Cristin*, 281 F.3d at 411; *see also Walker v. Vaughn*, 53 F.3d 609, 615 (3d Cir. 1995) ("As a matter of general practice, we assume that a district court which has excused exhaustion but has not yet embarked upon proceedings of substance will stay its hand once there is reliable evidence that the state action has been reactivated.").

Third, we consider whether "the petitioner himself is responsible for the delay." *Hankins*, 941 F.2d at 252. We will not excuse exhaustion when, for example, it results from petitioner's "inability to cooperate with his lawyers." *Wojtczak*, 800 F.2d at 354–55. But while a petitioner must take at least some initiative to push his case forward, he need not file motion after motion in the face of enduring judicial inertia. *See, e.g.*, *Story*, 26 F.3d at 406 (excusing exhaustion although petitioner did not alert the state court that it had not yet ruled on his state petition); *Hankins*, 941 F.2d at 252 (excusing exhaustion even though neither petitioner nor his attorney took any action for three years of an eleven-year delay).

9

All three factors bear on the question of whether a petitioner experienced inordinate delay. If he did, the burden "shift[s] . . . to the state to demonstrate why exhaustion should still be required," *Lee*, 357 F.3d at 341, and its explanation must be persuasive; we will not allow a habeas petition to linger indefinitely before a dilatory state court.

## B. The Superior Court's Delay in This Case

Morton recognizes that he did not exhaust his state court remedies, either on direct appeal or collateral review, so the only question we face is whether to excuse exhaustion on the basis of inordinate delay.[4] The District Court here declined to do so, focusing almost exclusively on Morton's failure to seek mandamus in the territorial court and discounting the years of delay he faced and his many efforts to move the litigation forward. This was in error: As we explain below, Morton satisfied his obligation to demonstrate inordinate delay, so the District Court should have required the Virgin Islands to justify his years-long wait. We will vacate and remand to give the Government that opportunity.

In assessing whether Morton faced inordinate delay, we first look to the extent of the delay. Here, the delay was severe. By the time Morton sought federal relief in April 2020, almost six years had elapsed since he first filed in territorial court, and

---

[4] The District Court noted that Morton may have exhausted one of his claims for violation of his Sixth Amendment right to effective assistance of counsel on direct appeal. Even so, we must dismiss "mixed petitions" that contain both exhausted and unexhausted claims, so that would not change our analysis. *Rose*, 455 U.S. at 510.

10

the Superior Court had done nothing but hold a status conference three years earlier. We have excused exhaustion when confronted with shorter periods of inaction. *See Wojtczak*, 800 F.2d at 354 (33 months); *Geisler*, 510 F.2d at 891 (40 months); *Senk*, 471 F.2d at 660 (44 months). As for progress in the territorial court, over four years have elapsed since Morton filed his federal petition, and seven since the Superior Court last acted, with no indication that proceedings will resume anytime soon. Taken together, these two factors—extreme delay and lack of progress—strongly support a determination of inordinate delay.

But was Morton himself "responsible for the delay"? *Hankins*, 941 F.2d at 252. Not on this record. Morton took reasonable steps to prosecute his case in the Virgin Islands. After filing his habeas petition and hearing from neither the Court nor the Government for months, he moved to establish a briefing schedule. When he again received no response, he followed up with a motion for default judgment. After the Government belatedly responded in early 2015, and still without word from the Court, Morton attempted to initiate the discovery process, serving the Government with his own Rule 26 disclosures and a request for production of documents, in addition to a first set of interrogatories and document discovery. Morton also filed motions to strike the Government's affirmative defenses and for judgment on the pleadings, to no avail. In November 2015, nearly one-and-a-half years after filing his petition, Morton moved for a status conference. Ten months later, having heard nothing, Morton *again* moved for a status conference. Seven months after that second request, in April 2017, the Court finally scheduled a conference, and when that conference was ultimately held in July—three years into the case—the Court merely promised

11

future action on which it ultimately did not deliver. This docket reflects that Morton rigorously pursued his case in the Virgin Islands.

The District Court nevertheless determined that Morton "contributed to the delay" by failing to seek mandamus from the Virgin Islands Supreme Court.[5] *Morton*, 2022 WL 17669172, at *8. But we have never held that seeking such a "drastic" remedy, *In re Elliot*, 54 V.I. 423, 428 (2010) (per curiam), is an absolute requirement, *see Hankins*, 941 F.2d at 251 (refusing to consider "whether it is necessary to pursue mandamus" as a "pre-condition to pursuing federal habeas corpus relief" because the "inordinate delay . . . clearly warrant[ed] an exception to the exhaustion requirement"). *But see Coady v. Vaughn*, 251 F.3d 480, 489 (3d Cir. 2001) (declining to excuse exhaustion where a petitioner who had never given state courts the chance to pass on his claims had not resorted to state mandamus procedures). Other circuits to confront the question have also not definitively concluded that a petitioner's failure to seek mandamus implicates him in a state court's delay. *See Williams v. Perini*, 557 F.2d 1221,

---

[5] The District Court also observed that, under V.I. Super. Ct. Habeas Corpus R. 2(a)(11), Morton could have filed a request for a ruling with the Superior Court, which would have prompted the clerk of court to notify the Presiding Judge of the Superior Court of the delay. But the Virgin Islands Supreme Court has held that a similar rule, V.I. Super. Ct. R. 14, does not represent an "adequate alternate form of relief" to remedy delay because the Presiding Judge "unquestionably lacks the authority to suspend, remove, or otherwise discipline one of his colleagues." *In re Fleming*, 56 V.I. 460, 469 (2012) (per curiam).

1223 (6th Cir. 1977) (declining to excuse exhaustion when petitioner had neither sought mandamus nor filed for habeas corpus in the state's highest court); *id.* at 1225 (Phillips, C.J., concurring) ("I do not construe the majority opinion to hold that appellant must apply for a writ of mandamus in the State courts as a part of his procedure for exhausting his State remedies."); *United States ex rel. Johnson v. McGinnis*, 734 F.2d 1193, 1200 (7th Cir. 1984) (requiring exhaustion of state mandamus procedures, but only when petitioner could not otherwise present his claims to a state court).

Ultimately, the question of whether a petitioner is responsible for a state court's delay does not hinge on whether he follows a particular procedure, but whether he has made reasonable efforts to push his litigation forward. Morton has made such efforts. He has also spent a decade waiting for his petition to be ruled upon, with no apparent progress in the past seven years. His predicament can only be characterized as one of inordinate delay, so before dismissing Morton's petition, the District Court should have obliged the Government to "demonstrate why exhaustion should still be required." *Lee*, 357 F.3d at 341.

## C.     Appropriate Remedy

But the District Court did not ask the Government for that demonstration. Instead, it dismissed Morton's petition without ever giving the Virgin Islands a chance to justify the Superior Court's delay. We will therefore remand this case to give the Government that opportunity.

On remand, the Government may explain why the Superior Court's delay does not warrant excusal of exhaustion.

13

At oral argument, the Government suggested for the first time that intervening events—two hurricanes and the COVID-19 pandemic—significantly disrupted the Superior Court's functioning. This explanation, if properly presented, might suffice to justify inordinate delay. We note, however, that the urgency of these disasters has ostensibly lessened, and the Superior Court still has not acted on Morton's petition. Any justification that the Government provides must therefore also account for the delay that has continued since Morton filed his federal petition. And considering the exceptional delay at issue here, the Government must point to something "extraordinary." *See Codispoti v. Howard*, 589 F.2d 135, 142 (3d Cir. 1978).

## IV.   Conclusion

Morton has waited ten years for a court to reach the merits of his habeas petition. Such a delay erodes confidence in the judiciary and its ability to dispense justice, and it is unacceptable absent a compelling reason. We will therefore vacate the District Court's judgment and remand for proceedings consistent with this opinion.