THE PEOPLE *ex rel.* DAVID KENNEY, Director, Department of Conservation, Plaintiff-Appellee, v. THE CITY OF GOREVILLE *et al.*, Defendants-Appellants.

Fifth District  No. 5—86—0174

Opinion filed April 16, 1987.

Harris, Lambert & Wilson, of Marion, for appellants.

Neil F. Hartigan, Attorney General, of Springfield (Roma Jones Stewart, Solicitor General, and Gabriel M. Rodriguez, Assistant Attorney General, of Chicago, of counsel), for appellee.

JUSTICE HARRISON delivered the opinion of the court:

Defendants, the village of Goreville and its mayor, appeal from orders of the circuit court of Johnson County finding in favor of plaintiff, the Illinois Department of Conservation (the Department), in a dispute over a road which is located in the village of Goreville and runs through Ferne Clyffe State Park. The circuit court granted the Department's motion for summary judgment on its petition for a permanent injunction which sought to enjoin the village from exercising any control over the road which the Department had barricaded. Defendants contend genuine issues of material fact remain in the case, arguing particularly that the road had become a public highway by prescription or, alternatively, that the Department had entered into an agreement with the village to reopen the road. We reverse the order granting summary judgment and remand.

The dispute over this road has been the subject of previous litigation, including a decision by this court as well as one by our supreme court. The controversy arose in 1973 when the Department closed the road. The Department had obtained title to the property in Johnson County on which the road was located in the late 1940's from Emma Rebman and subsequently began using the land as a State park. The park extends partly into the village limits of Goreville. The entire road is located in the portion of the park which is within the village limits. The Department closed the road after studies showed it to be dangerous due to its poor condition and steep grades. In the initial litigation, the village sued the Department in order to force it to rebuild

and reopen the road after the Department had ordered it closed. After a decision favorable to the village in the circuit court, this court reversed the judgment, finding the action against the Department barred by the doctrine of sovereign immunity, but noting the action could be brought in the Illinois Court of Claims. (*Hudgens v. Dean* (1977), 53 Ill. App. 3d 126, 368 N.E.2d 944.) Subsequently, the supreme court affirmed our judgment. *Hudgens v. Dean* (1979), 75 Ill. 2d 353, 388 N.E.2d 1242.

In the present litigation, the Department filed a petition for a permanent injunction in order to prevent defendants from exercising control over the road, which the Department has kept barricaded. Defendants filed a counterclaim, alleging that the road had become a public highway by prescription and that it was a municipal street, and alleging that the Department had entered into an agreement to turn over control of the road to the village. The trial court subsequently dismissed defendants' counterclaim on February 2, 1984. Defendants then filed two affirmative defenses, which, like the counterclaim, asserted the road was a public highway under municipal control or that the Department had agreed to reopen the road. Ruling on a motion filed by the Department, the court struck defendants' second affirmative defense based upon the alleged contract. Both sides then moved for summary judgment. The trial court denied defendants' motion and granted summary judgment in favor of the Department.

In support of its motion for summary judgment, the Department filed the transcript of the trial in *Hudgens v. Dean.* That transcript constitutes the primary source for the facts of this case, and we now review the testimony given in that previous litigation.

Several witnesses testified regarding use of the road. A. L. Foster testified he moved to Goreville in 1913 and has lived there since then. He stated that hundreds of people used the road, including families who lived in the area as well as the general public. Foster testified he never asked anyone for permission to use the road. In 1916, Foster began a business in which he transported tourists from a local train depot to the scenic area that today is the State park. He personally used the road from 1916 until it was closed in 1973. Foster testified that a man named Dennison Gholson owned the property prior to Rebman and that Gholson sold it to Rebman in 1925 or 1930. Rebman invited people to come to the area, according to Foster. Foster further stated he had served as a village official in Goreville for 32 years and that during his tenure the village cooperated with local farmers to maintain the road, with the village sending volunteers to do the work. In conflicting testimony, Foster at one point stated the village

board had authorized expenditures for maintaining the road, but later said no village money was spent on materials or labor. Foster also testified that after the State had acquired the property, the State came to Goreville officials to obtain a permit to surface the road.

Cloyd Miles testified that he lived in Goreville beginning in 1910. He rode a pony on the road as a young boy. Miles testified that many people used the road, including farmers hauling produce and other supplies.

Dessie Mays, who was 76 years old at the time of trial, testified that she lived in Goreville all of her life and that the public has always used the road. She personally has used the road and has never asked anyone's permission to do so. She considered it a public road. Mays stated that Rebman invited people to come to the area and that Rebman charged 10 cents admission.

Ed Jenkins, who moved to a farm near the park area in the 1930's, testified also that the public used this road. He stated he never asked anyone's permission to use the road, but that Rebman did charge admission to the park for a time. He stated she charged this admission 25 to 30 years ago, meaning 1950 or 1945. He stated that Rebman hired a man to work on the road in the 1930's but that the town also sent volunteers to maintain the road.

R. C. Martin testified he used the road often before he moved from Goreville in about 1920. He stated that the public had used the road since 1910. He never sought anyone's permission or paid anyone to travel on it. He did acknowledge that Rebman had at one time charged tourists admission to come on her property.

Nell Walker, who was 75 years old, testified the public used the road "all the time" as far back as she can remember. She never paid or sought permission to use the road.

Pete Ray testified that he was employed in 1949 by the State to clear the road so it could be used for the new State park. He also stated that Rebman had operated a private park in the 1920's and 1930's and that she had tried to charge admission once or twice.

Ralph Pritchett testified he began using the road in about 1920 and that the public used the road as well. He never asked permission of anyone to use it. Pritchett also stated that sometime in the 1920's or 1930's he had worked with a volunteer crew from the town to maintain the road and that Rebman owned the land when this work was performed. Rebman invited people to the area, according to Pritchett, but he stated she only charged admission for a year or so.

Carl Thunman, who had served as an engineer for the Conservation Department before retiring, testified the road was in poor condi-

tion when he first inspected it in 1952. He arranged to have improvements made, including the building of a new entrance road. He testified that the parks division maintained the road during his term as engineer. He stated there was no maintenance performed during this time by the city.

Ralph Zech, village clerk in Goreville at the time of the trial court proceedings in the initial litigation, testified he could find no record that the village had ever vacated the road.

In addition to the transcript of this testimony, the record also includes a copy of a letter dated November 15, 1976, sent from the Department to the village. This letter states the Department had intended to blacktop the road then reopen it, but that due to a lack of funds it would not be able to carry out that plan. The letter states that the Department was willing to discuss proposals for a more limited plan for improving the road.

██ We first address a jurisdictional issue raised by the Department. It contends defendants are not entitled to review of certain orders of the trial court because they were not specified in the defendants' notice of appeal. The notice of appeal states defendants appeal "from the Order entered and filed herein on March 7, 1986, which granted summary judgment to plaintiff against these defendants and from the decision of Judge Horman set forth in the letter filed herein on February 21, 1986." The notice of appeal then states that defendants are requesting that the order and decision be vacated and the cause remanded for trial on all issues. In its brief on appeal, defendants raise arguments pertaining to the order dated February 2, 1984, which dismissed their counterclaim, and pertaining to an order entered on March 7, 1986, denying the defendants' motion for summary judgment. The Department contends that because these orders were not specified in the notice of appeal, we are without jurisdiction to review them.

Defendants had filed a motion in this court for leave to amend their notice of appeal to include the February 2, 1984, order, but we denied the motion as untimely in an order entered on July 23, 1986. In that order, we found we were without jurisdiction to consider the February 2, 1984, order on appeal, and that the notice of appeal would control the scope of review.

We see no reason to depart from our earlier decision finding that the order of the circuit court of February 2, 1984, dismissing the counterclaim is not properly before us. In *Illinois Central Gulf R.R. Co. v. Sankey Brothers, Inc.* (1979), 78 Ill. 2d 56, 61, 398 N.E.2d 3, 5, the supreme court held that it lacked jurisdiction to review an order

dated December 6, 1977, dismissing a counterclaim when that order was not included in a notice of appeal which referred only to a judgment entered on April 5, 1978, in favor of the plaintiff. Thus, the order here dismissing the counterclaim is not before us.

■ We need not analyze in detail whether defendants' notice of appeal was sufficient to give us jurisdiction to address the order denying defendants' motion for summary judgment. Defendants conceded at oral argument in this court that the theory upon which they had based their motion was unsupported by the law. Furthermore, due to our conclusion in this opinion that there are genuine issues of fact remaining in the case, neither side is entitled to summary judgment and we need not address the denial of defendants' motion as a separate issue.

■ Addressing the issues which are properly before us, we first consider whether the Department was entitled to summary judgment. A motion for summary judgment should be granted only where the pleadings, exhibits, depositions, and affidavits of record show that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. (Ill. Rev. Stat. 1985, ch. 110, par. 2—1005.) Because summary judgment is a drastic measure, it is to be granted only where the evidence, when construed most strongly against the moving party, establishes clearly and without doubt his right thereto. *Motz v. Central National Bank* (1983), 119 Ill. App. 3d 601, 605, 456 N.E.2d 958, 961.

■ We find the Department has failed to establish clearly and without doubt its right to summary judgment. Defendants do not dispute that the Department obtained title by warranty deed to the land in question, including the road, from Emma Rebman in the late 1940's. However, there is a sharp dispute over whether the road had at some time become a public highway. Under section 2—202 of the Illinois Highway Code (Ill. Rev. Stat. 1985, ch. 121, par. 2—202), a private road becomes a public highway if used by the public for a 15-year period. The requirements necessary to establish a public highway by prescription under the statute are the same as those necessary to establish a private easement by prescription. The use by the public must be adverse, under a claim of right, continuous and uninterrupted, with the knowledge of the owner but without his consent. (*People ex rel. Carson v. Mateyka* (1978), 57 Ill. App. 3d 991, 997-98, 373 N.E.2d 471, 475-76.) In determining whether a road has become a public highway, the test is whether the public generally had the free and unrestricted right to use the road. (*King v. Corsini* (1975), 32 Ill. App. 3d 461, 465, 335 N.E.2d 561, 564.) "Once such a public use has

been shown, the burden is on the party who denies the existence of a public highway to show that the use was under some license or indulgence inconsistent with the claim of right by the public." *Neely v. Coffey* (1980), 81 Ill. 2d 439, 443, 410 N.E.2d 839, 841-42.

The record indicates several residents of Goreville believed this to be a public road, with evidence that it was used by the public as early as 1910. Several residents testified they never asked anyone's permission to use the road. The Department points to evidence that Rebman invited tourists to come to her property for viewing the scenic area and that use of the road was thus permissive. However, the record is not clear in which years tourists were welcomed on the property, or even in what year she purchased the land. It is possible it had become a public highway prior to the time she began inviting tourists to come to the area. Another possible inference is that when she invited tourists to come view the scenery on her property, she may have acknowledged that they could arrive by way of a road which she considered to be a public highway and that the admission charge was for entering the park and not the use of the road. There was also evidence that residents of Goreville performed maintenance on the road. Such maintenance by the public is strong evidence that the roadway is in fact public. (See *Foster v. Wills* (1973), 13 Ill. App. 3d 127, 131, 299 N.E.2d 765, 768.) Further evidence indicated that after the Department had acquired the property, it went to Goreville to obtain a permit to repair the road. This could indicate acknowledgement on the part of the Department that the road had become a public highway under the control of Goreville.

■ We agree with the Department's assertion, however, that if this road became a public highway, it had to have become a public highway prior to acquisition of the property by the Department. Adverse possession does not run against a governmental body regarding property devoted to public use. (See *Terwelp v. Sass* (1982), 111 Ill. App. 3d 133, 138, 443 N.E.2d 804, 808.) However, a genuine issue of fact remains regarding whether the road had become a public highway prior to the Department's acquisition of title.

■ If Ferne Clyffe Road had become a public highway, it became part of the street system of Goreville under the provisions of section 2—104 of the Illinois Highway Code (Ill. Rev. Stat. 1961, ch. 121, par. 2—104). Under that statute, a municipal street system includes existing streets in municipalities which are not part of the State highway system or county highway system. Thus, in 1973 when the Department barricaded the road, the village, by statute, had authority to control the road if it in fact had become a public highway. The Depart-

ment argues, however, that pursuant to statute (Ill. Rev. Stat. 1985, ch. 105, par. 468(3)), the Conservation Department is authorized to "lay out, construct and maintain all needful roads" in State parks. However, the Department cannot rely on this section to negate the rights of anyone holding an easement on park property at the time the property becomes a State park. Furthermore, while section 4—203 of the Illinois Highway Code (Ill. Rev. Stat. 1985, ch. 121, par. 4—203) provides that the Illinois Highway Department may add to the State highway system by "taking over highways from *** the municipal street system," we find no express authority for the Conservation Department to "take over" a municipal street.

Therefore, we conclude the Department was not entitled to summary judgment as a matter of law and that there are genuine issues of material fact remaining as to whether the road had become a public highway under section 2—202 of the Illinois Highway Code.

Defendants next contend the court erred when it granted the Department's motion to strike their second affirmative defense. This second affirmative defense alleged the Department had entered into an agreement with defendants to reopen the road. The court granted the motion to strike this defense on the ground that the court lacked jurisdiction to determine whether a contract existed because claims against the State founded upon a contract are within the exclusive jurisdiction of the Illinois Court of Claims.

Under section 4 of article XIII of the 1970 Illinois Constitution, the doctrine of sovereign immunity was abolished "[e]xcept as the General Assembly may provide by law." Acting under the authority of this provision, however, the General Assembly retained sovereign immunity by enacting legislation which states: "Except as provided in the 'Illinois Public Labor Relations Act' ***, or except as provided in 'An Act to Create the Court of Claims, to prescribe its powers and duties, and to repeal An Act herein named,' ***, the State of Illinois shall not be made a defendant or party in any court." (Ill. Rev. Stat. 1985, ch. 127, par. 801.) Section 8 of the Court of Claims Act provides, in pertinent part:

> "The court [of claims] shall have exclusive jurisdiction to hear and determine the following matters:
> ***
>
> (b) All claims against the state founded upon any contract entered into with the State of Illinois." Ill. Rev. Stat. 1985, ch. 37, par. 439.8(b).

The Department argues, agreeing with the reasoning of the trial court, that the affirmative defense based upon the alleged agreement

was a claim against the State based upon a contract. The Department cites the decision in *People v. Patrick J. Gorman Consultants, Inc.* (1982), 111 Ill. App. 3d 729, 444 N.E.2d 776, for the proposition that a person sued by the State in circuit court cannot bring a counterclaim against the State in circuit court, but must bring his claim against the State in the court of claims. In the present case, the matter raised in defendants' affirmative defenses had been raised earlier by way of a counterclaim which was dismissed. The Department argues that defendants attempted to circumvent the Court of Claims Act by simply recasting the counterclaim as affirmative defenses.

■■ ■ An affirmative defense merely attempts to defeat a plaintiff's cause of action, whereas a counterclaim is a cause of action which seeks affirmative relief. (*Benckendorf v. Burlington Northern R.R.* (1983), 112 Ill. App. 3d 658, 662, 445 N.E.2d 837, 840.) Defendants alleged the existence of the agreement as a means of defeating the Department's claim for an injunction. After the dismissal of their counterclaim, they were no longer asking for affirmative relief. We acknowledge that in *Hudgens v. Dean* (1977), 53 Ill. App. 3d 126, 132, 368 N.E.2d 944, 949, we suggested that the court of claims would have jurisdiction to hear this case when it was brought by Goreville seeking affirmative relief. However, in the present posture of this litigation, defendants are not seeking affirmative relief. The Department has chosen to sue in circuit court to prevent defendants from asserting control over the road. Defendants must be able to defend against the Department's claim. The issues raised by defendants as defenses cannot be extracted from the proceedings on the Department's claim for an injunction. Therefore, the trial court erred in dismissing defendants' second affirmative defense and defendants should be allowed to raise it upon remand.

For the foregoing reasons, the order of the circuit court of Johnson County granting the Department's motion to strike defendants' second affirmative defense is reversed. The order of the circuit court granting summary judgment in favor of the Department is reversed and the cause remanded for further proceedings.

Reversed and remanded.

JONES and WELCH, JJ., concur.