(No. 84-CC-1816—)

JOHN J. GORDON and SAVANNA STATE BANK, Claimants, *v.*
THE STATE OF ILLINOIS, Respondent.

*Opinion filed January 8, 1991.*

NACK, RICHARDSON & KELLY (WILLIAM A. KELLY, of
counsel), for Claimant.

NEIL F. HARTIGAN, Attorney General (JOHN BUCKLEY,
Assistant Attorney General, of counsel), for Respondent.

## OPINION

MONTANA, C.J.

This cause arises out of a dispute concerning Claimants' alleged ownership and security interest in a parcel of land located next to the Plum River by Illinois Route 84 south of Savanna, Illinois.

In 1956 John J. Gordon and his now deceased wife, Harriet B. Gordon, purchased a parcel of property from John and Jewell Meeker. A building housing a restaurant known as Meeker's Seafood Inn was located on the property. The building had housed a restaurant since at least 1942. A parking lot used by restaurant patrons was located immediately adjacent to the restaurant to the west. The legal description in the 1956 deed to the Gordons did not include the property containing the parking lot which is now claimed by Claimants and Respondent. The record title owner of the property on which the parking lot was located was Oskar Skaien and previously his predecessors in title until 1977 when Skaien quitclaimed his interest to the State of Illinois.

The Gordons continued to operate the restaurant until 1972 when the restaurant was sold on contract to Gary Harmsen who continued to operate the restaurant. In 1976 Harmsmen defaulted and Savanna State Bank instituted foreclosure proceedings. Possession passed to Lyle Law as receiver and John J. Gordon remains the owner.

In 1977 the Department of Transportation of the State of Illinois (D.O.T.) was constructing the current bridge for Route 84 across the Plum River when it took control of a portion of the parking lot on the property at issue for use as the northern approach to the bridge. It appears that three other bridges had been built crossing the Plum River at this approximate location and then torn down when replaced by new bridges constructed next to the bridge being replaced. The current bridge is allegedly in the approximate location of a bridge which existed prior to 1929.

In 1980 Claimants filed suit in the circuit court of Carroll County seeking the issuance of a writ of *mandamus* compelling D.O.T. to commence condemnation proceedings regarding the portion of the parking lot D.O.T. took control of in 1977. Claimants asserted that the portion of the parking lot taken by D.O.T. was on land that their predecessors had acquired from Oskar Skaien and his predecessors in title by adverse possession. Exhibit A attached to Claimants' complaint was the legal description of the property Gordon allegedly owned and in which Savanna State Bank allegedly held a security interest. It stated:

"A part of the Northwest Quarter of Section Fourteen (14), Township Twenty-four (24) North, Range Three (3), East of the Fourth Principal Meridian, bounded and described as follows;

Beginning at a point on the East line of the Northeast Quarter of the Northwest Quarter of Section Fourteen (14), Township Twenty-four (24)

North, Range Three (3), East of the Fourth Principal Meridian, Nine Hundred Ninety-two (992) feet South of the Northeast corner of said Northeast Quarter of the Northwest Quarter;

Thence South 19°10′ East 272.0 feet;

Thence South 74°20′ West 190.0 feet to a point on the East Right of Way line of Illinois State Route No. 84;

Thence North 18°40′ West 304.0 feet more or less to a concrete Right of Way post on the East Right of Way line of Route No. 84;

Thence North 83°44′ East 191.5 feet to the Point of Beginning.

EXCEPT

Right of ingress and egress over the following easements is hereby reserved by Harriett B. Gordon as follows;

Easement 'A'—a twelve (12) foot driveway, the center of the east end of which is on the west line and 206 feet north of the Southeast corner of the above tract—the center of the West end is on the West line and 238 feet North of the Southwest corner of the above described tract.

Easement 'B'—a twelve (12) foot driveway parallel to and immediately North of the South line."

This legal description includes the disputed property that is the subject of this claim. Exhibit B attached to Claimants' complaint was a copy of a plat in which the disputed parcel of property is shaded. D.O.T. claimed it owned this property based on the 1977 quitclaim deed from Oskar Skaien or by common law dedication or prescription. The legal description of the disputed shaded property was described in interrogatories answered by Gordon as:

"A part of the Northwest Quarter of Section Fourteen (14), Township Twenty-four (24) North, Range Three (3), East of the Fourth Principal Meridian, bounded and described as follows:

Beginning at a point on the East line of the Northeast Quarter of the Northwest Quarter of Section Fourteen (14), Township Twenty-four (24) North, Range Three (3) East of the Fourth Principal Meridian, Nine Hundred Ninety-two (992) feet South of the Northeast corner of said Northeast Quarter of the Northwest Quarter;

Thence South 19° 10′ East 272.0 feet;

Thence South 74° 20′ West 190.0 feet to a point on the East Right-of-Way line of Illinois State Route No. 84;

Thence North 18° 40′ West 304.0 feet more or less to a concrete Right-of-Way post on the East Right-of-Way line of Route No. 84;

Thence North 83° 44′ East 191.5 feet to the point of beginning.

EXCEPT: Right of ingress and egress over the following easements is hereby reserved by Harriet B. Gordon as follows:

Easement 'A': A twelve (12) foot driveway, the center of the east end of which is on the east line and 206 feet north of the Southeast corner of the above tract—the center of the West end is on the West line and 238 feet North of the Southwest corner of the above described tract.

Easement 'B': A twelve foot driveway parallel to and immediately North of the South line.

ALSO, EXCEPTING THEREFROM THE FOLLOWING:

A part of the Northwest Quarter of Section Fourteen (14), Township Twenty-four (24), North, Range Three (3), East of the Fourth Principal Meridian, bounded and described as follows: Beginning at a point on the East line of the Northeast Quarter of the Northwest Quarter of Section Fourteen (14), Township Twenty-four (24) North, Range Three (3) East of the Fourth Principal Meridian, Nine Hundred Ninety-two (992) feet South of the Northeast corner of the said Northeast Quarter of the Northwest Quarter, from which said point of beginning a section of steel fence post driven into the ground and using a declination of North Four (4) degrees East, running thence along said East line South Two (2) degrees Forty-five (45) minutes East Two Hundred Sixty-eight (268) feet to a stake on the North bank of Plum River; thence along said North bank South Seventy-two (72) degrees Twenty (20) minutes West Forty-six (46) feet to the East line of State Bond Issue Route Number 80; thence along said East line North Seventeen (17) degrees Forty (40) minutes West One Hundred Twenty-five (125) feet to a concrete right of way post; thence North Twenty-nine (29) degrees Forty-four (44) minutes West One Hundred Sixty-eight (168) feet to a section of steel fence post driven into the ground; and thence North Eighty-four (84) degrees Thirty (30) minutes East One Hundred Forty-five and Two Tenths (145.2) feet to the point of beginning, all in the Northeast Quarter of the Northwest Quarter of section Fourteen (14), Township Twenty-four (24) North, Range Three (3) East of the Fourth Principal Meridian and containing Fifty-seven Hundredths (.57) acres, more or less.

ALSO, EXCEPTING THEREFROM THE FOLLOWING:

The property lying East of the East line of the Northwest Quarter of Section Fourteen (14), Township Twenty-four (24) Range Three (3) East of the Fourth Principal Meridian."

Following a bench trial the trial court issued a memorandum opinion finding that Claimants and their predecessors had adversely possessed the disputed property since 1942 against Skaien and his predecessors

in title, and that D.O.T. had not acquired the property because Skaien did not have an interest in the property when he conveyed the quitclaim deed to D.O.T. The trial court further found that D.O.T. had failed to prove it acquired the property by common law dedication or prescription. The clerk of the circuit court was directed to issue the writ as prayed for by Claimants.

D.O.T. filed a post-trial motion asking for reconsideration and a rehearing. Shortly thereafter D.O.T. filed a motion to dismiss requesting that the action be dismissed since the State could not be a defendant or party in any court except as provided in the Court of Claims Act (Ill. Rev. Stat. 1979, ch. 37, par. 439.1 *et seq.*). After the trial court denied both motions D.O.T. appealed to the appellate court of Illinois, second district, seeking reversal of the trial court judgment and remand for entry of an order of dismissal.

In *Gordon v. Department of Transportation* (1982), 109 Ill. App. 3d 1071, 441 N.E.2d 904, the trial court judgment was reversed because the appellate court determined that the proper forum for Claimants' lawsuit was the Illinois Court of Claims. In so doing the appellate court reasoned at 109 Ill. App. 3d 1074, 441 N.E.2d 906:

"In the case at bar, the Department of Transportation of the State of Illinois is named as the only defendant in this lawsuit and ownership of the property in question was disputed, litigated and determined in the court below. A department of State government is a part, or division, of the government, and a suit against a department of the State is a suit against the State. (*Noorman v. Department of Public Works* (1937), 366 Ill. 216, 8 N.E.2d 637.) When the property of the State is involved, the State is directly and adversely affected by the suit and the action must be held to be one against the State. (*Sass v. Kramer* (1978), 72 Ill. 2d 485, 21 Ill.Dec. 528, 381 N.E.2d 975.) It is readily apparent here that the State is, in reality, a defendant in a suit in which a determination was made in the court below that the State had no interest in certain property. Clearly, then, the action is one against the State which under the holding in *Sass* cannot be brought in any court except as provided in the Court of Claims Act."

In response to Claimants' argument that a *manda-mus* proceeding does not pursue a claim against the State, but rather seeks to enforce the performance of an official duty by a public official, the appellate court stated at 109 Ill. App. 3d 1075, 441 N.E.2d 907:

"*Mandamus* is an appropriate remedy to compel a public officer to exercise the discretion vested in him (*People ex rel. Tucker v. Kotsos* (1977), 68 Ill. 2d 88, 99, 11 Ill.Dec. 295, 368 N.E.2d 903), or to compel public officials to comply with statutory or constitutional duties. (*Overend v. Guard* (1981), 98 Ill.App.3d 441, 443, 53 Ill.Dec. 940, 424 N.E.2d 731.) Nonetheless, the defendant in the instant case is a department of State government which makes this a suit against the State. (*Noorman v. Department of Public Works* (1937), 366 Ill. 216, 8 N.E.2d 637.) Thus, the State is a defendant in a suit which, pursuant to 'An Act in relation to immunity for the State of Illinois' (Ill. Rev. Stat. 1979, ch. 127, par. 801), cannot be maintained in any court except as provided in the Court of Claims Act. See *Sass v. Kramer* (1978), 72 Ill. 2d 485, 21 Ill.Dec. 528, 381 N.E.2d 975.

Even were plaintiffs here to have brought this action against the Secretary of the Department of Transportation, under the facts of this case the issue which must necessarily be decided before a writ of *mandamus* could issue compelling institution of eminent domain proceedings is ownership of the property in question. As the determination of title to property involves and directly affects an interest in property of the State of Illinois, the State is the real party in interest and cannot be sued except as provided in the Court of Claims Act. (*Sass v. Kramer* (1978), 72 Ill. 2d 485, 21 Ill.Dec. 528, 381 N.E.2d 975.)"

Claimants then appealed to the supreme court of Illinois. In *Gordon v. Department of Transportation* (1983), 99 Ill. 2d 44, 457 N.E.2d 403, the supreme court affirmed the appellate court's decision stating at 99 Ill. 2d 47, 457 N.E.2d 405:

"Section 4 of article XIII of the Illinois Constitution of 1970 provides:

'Except as the General Assembly may provide by law, sovereign immunity in the State is abolished.'

Section 1 of 'An Act in relation to immunity for the State of Illinois' (Ill. Rev. Stat. 1979, ch. 127, par. 801) provides:

'Except as provided in 'An Act to create the Court of Claims, to prescribe its powers and duties, and to repeal An Act herein named', filed July 17, 1945, as amended, the State of Illinois shall not be made a defendant or party in any court.'

In the case at bar, the State of Illinois has title to the disputed property. Since the State acquired the property by quitclaim deed, it is clear that the Court

of Claims, and not the circuit court, had jurisdiction. It is the legislature's task to codify public policy; we refrain from undertaking such impermissible judicial legislation. (*S.J. Groves & Sons Co. v. State* (1982), 93 Ill.2d 397, 407, 67 Ill.Dec. 92, 444 N.E.2d 131.) We need not reach the question of whether a different result would obtain if the State were not the actual owner of the property. (See also *Granite City Moose Lodge No. 272 v. Kramer* (1983), 96 Ill.2d 265, 268-69, 70 Ill.Dec. 505, 449 N.E.2d 852; *Sass v. Kramer* (1978), 72 Ill.2d 485, 489, 21 Ill.Dec. 528, 381 N.E.2d 975; Comment, *State Immunity in Illinois: The Court of Claims* 15 DePaul L. Rev. 340, 342-44 (1966).)"

While their appeal was pending with the supreme court Claimants filed their first complaint with this Court on January 23, 1983. An amended complaint was filed on December 11, 1985, and a second amended complaint was filed on February 27, 1986. A hearing was held before Commissioner Barry Fisher who duly filed his report. Oral argument before the judges of the Court of Claims was held on December 6, 1988.

Claimants' second amended complaint states three counts and attached to it are the Exhibit A and Exhibit B that were attached to the original trial court complaint. Count I seeks the issuance of a writ of *mandamus* ordering the secretary of D.O.T. to commence condemnation proceedings with regard to the property taken. Count II seeks approximately $153,000.00 based on an implied contract between the State and Claimants for the State to pay just compensation for the property allegedly taken from Claimants. Count III requests the Court to quiet title to the disputed property in favor of Claimants. At the oral argument however, Claimants' attorney indicated Claimants were only seeking to have this Court determine whether Claimants' right to the disputed property had been perfected through adverse possession. He stated that if Claimants were successful in having the Court determine the Claimants had a superior claim to the property than the State, then Claimants would return to the circuit court and seek a

writ of *mandamus* if negotiations with D.O.T. were unsuccessful. Respondent's attorney agreed with Claimants' attorney's characterization of the procedure that would be followed if Claimants received a favorable decision from the Court regarding the title to disputed property.

It appears the parties have agreed to have the record of the prior proceedings serve as the record for this Court to use in making its determination. The report submitted by Commissioner Fisher was accompanied by the following items:

1. Illinois Supreme Court Order
2. Proposed Order of Claimant
3. Proposed Order of Respondent
4. Court Records of Carroll County 80-MR-1
5. 8 Photos of location in question
6. Petitioner's Brief Carroll County
7. Appellate Court Order 82-46
8. Motion to Amend
9. Respondent's Argument and Brief Carroll County
10. Petition for Writ of *Mandamus*
11. Memorandum Opinion & Order entered November 20, 1981
12. Evidence Deposition Circuit Court
13. Historical Background Circuit Court

In rendering this opinion, we observe that in some respects the record lacks detail. However, it is the parties' responsibility, not ours, to make a record that supports their respective positions. We presume that the parties fulfilled that responsibility to the best of their ability and we will rule accordingly.

Claimants allege they and their predecessors, the Meekers, have adversely possessed the disputed

property from 1942 until D.O.T. forcibly took a portion of it in 1977. They assert that D.O.T.'s taking under color of the Skaien quitclaim deed was beyond the 20-year limitations period formerly set forth in section 1 of the Limitations Act (Ill. Rev. Stat. 1973, ch. 83, par. 1 *et seq.*), but now incorporated in the Code of Civil Procedure (Ill. Rev. Stat. 1989, ch. 110, par. 1—101 *et seq.*) in section 13—101. That section provides:

"No person shall commence an action for the recovery of lands, nor make an entry thereon, unless within 20 years after the right to bring such action or make such entry first accrued, or within 20 years after he, she or those from, by, or under whom he or she claims, have acquired title or possession of the premises, except as provided in Sections 13-102 through 13-122 of this Act."

Regarding claims of adverse possession the supreme court of Illinois stated in *Joiner v. Janssen* (1981), 85 Ill. 2d 74, 421 N.E.2d 170; at 85 Ill.2d 80, 421 N.E.2d 173:

"The essence of the doctrine of adverse possession is the holding of the land adversely to the true titleholder. 'A party, claiming title by adverse possession, always claims in derogation of the right of the real owner. He admits that the legal title is in another. He rests his claim not upon a title in himself, as the true owner, but upon holding adversely to the true owner for the period prescribed by the Statute of Limitations.' (*Mercer v. Wayman* (1956), 9 Ill. 2d 441, 445-46, 137 N.E.2d 815; *White v. Harris* (1903), 206 Ill. 584, 592, 69 N.E. 519; 3 Am. Jur.2d *Adverse Possession* sec. 7, at 87 (1962).) To hold that because the possessor knows or should know that record title is in another precludes any possibility of the possessor's title being adverse is the antithesis of the doctrine of adverse possession as it has existed in this State. (*Illinois Central R.R. Co. v. Houghton* (1888), 126 Ill. 233, 18 N.E. 301.) The possessor's good faith in claiming title is, of course, required by the statutory provisions relating to possession for seven years under color of title (Ill. Rev. Stat. 1977, ch. 83, pars. 6,7); it is not relevant under the 20-year doctrine (Ill. Rev. Stat. 1977, ch. 83, par. 1).

What is essential in order to establish title under the 20-year adverse-possession doctrine incorporated in section 1 of the Limitations Act (Ill. Rev. Stat. 1977, ch. 83, par. 1) is that there must be 20 years' concurrent existence of the five elements: (1) continuous, (2) hostile or adverse, (3) actual, (4) open, notorious, and exclusive possession of the premises, (5) under claim of title inconsistent with that of the true owner. (*Cannella v. Doran* (1961), 21 Ill. 2d 514, 173 N.E.2d 512; *Cagle v. Valter* (1960), 20 Ill. 2d 589, 170 N.E.2d 593; *Mercer*, supra.) Presumptions are in favor of the title owner, and the burden of proof upon the adverse possessor requires that each element be

proved by clear and unequivocal evidence. (*Walter v. Jones* (1958), 15 Ill.2d 220, 154 N.E.2d 150; *Schwartz v. Piper* (1954), 4 Ill. 2d 488, 122 N.E.2d 535.) The incidents of that possession determine its character. The 'hostile' nature of the possession does not imply actual ill will, but only the assertion of ownership incompatible with that of the true owner and all others. (*Hunsley v. Valter* (1958), 12 Ill. 2d 608, 147 N.E.2d 356.) 'Where there has been an actual, visible and exclusive possession for twenty years it is not essential to the bar of the Statute of Limitations that there should have been any muniment of title or any oral declaration of claim of title, but it is sufficient if the proof shows that the party in possession has acted so as to clearly indicate that he did claim title, 'No mere words could more satisfactorily assert that the defendant claimed title than its continued exercise of acts of ownership over the property for a period of twenty years does. Using and controlling property as owner is the ordinary mode of asserting claim of title, and, indeed, is the only proof of which a claim of title to a very large proportion of property is susceptible.' [Citations.] ***. Such improvements or acts of dominion over the land as will indicate to persons residing in the immediate neighborhood who has the exclusive management and control of the land are sufficient to constitute possession. [Citations.]' *Augustus v. Lydig* (1983), 353 Ill. 215, 221-22, 187 N.E.278; see also *Hunsley v. Valter* (1958), 12 Ill. 2d 608, 614, 147 N.E.2d 356."

The record before this Court shows Gordon and his predecessors in title used the disputed property for parking of restaurant patrons from at least 1942 to 1977. The parking area was unpaved until 1964 when Gordon had a portion of it blacktopped. Gordon has proven the existence of the necessary elements set forth in *Joiner, supra,* to establish adverse possession. He and his predecessors had actual, open, notorious, and exclusive possession of the property for a continuous period over 20 years. The possession was hostile or adverse to the true owners of the property at the time, Oskar Skaien and his predecessors, and Gordon and his predecessors while in possession acted so as to clearly indicate that they did claim title. We must conclude that when D.O.T. acquired title to the disputed property by quitclaim deed from Oskar Skaien, Skaien's interest in the property had already been extinguished by the adverse possession of Gordon and his predecessors. A quitclaim deed conveys only the grantor's interests in the property

described therein. (See *Hulke v. International Manufacturing Co.* (1957), 14 Ill. App. 2d 5, 31, 142 N.E.2d 717, 731.) Therefore, the State, through D.O.T. did not acquire any interest in the property through the Skaien quitclaim deed.

Respondent, however, maintains it already had an interest in the disputed property irrespective of the Skaien deed based on either common-law dedication or prescription. The adverse possession claimed by Gordon was therefore against the State. Respondent correctly propounds that adverse possession does not run against a governmental body regarding property devoted to public use. See *People ex rel. Kenney v. City of Goreville* (1987), 154 Ill. App. 3d 1091, 1098, 507 N.E.2d 1247, 1251.

In *People ex rel. Markgraff v. Rosenfield* (1943), 383 Ill. 468, 50 N.E.2d 479, the supreme court of Illinois stated at 383 Ill. 473, 50 N.E.2d 482:

"To constitute a common-law dedication it is essential that there be an intention on the part of the owner of the land to donate the same to the public use and an acceptance thereof by the public. The proof of all these facts must be clear and unequivocal. The vital and controlling principle in a common-law dedication is the animus donandi, which may be indicated by a formal declaration or by acts from which it may be so fairly presumed as to equitably estop him from denying such intention. But without such manifestation of intent by either of those modes, it cannot be said that a valid dedication is shown."

The legal description in the warranty deed by which the Gordons acquired the property on which the restaurant stood from the Meekers in 1956, as set forth in interrogatories answered by Gordon, describes the southern boundary of the property as running "thence along said North Bank South Seventy-two (72) degrees Twenty (20) minutes West Forty-six (46) feet to the East line of State Bond Issue Route Number 80 * * *." (State Route 80 was later changed to State Route 84). This is

also set forth in Gordon's legal description of the disputed shaded property on page 5, *supra*. This indicates that at one time the northern approach to a prior bridge may have indeed run through the disputed property. However, based on the record before this Court, Respondent has not provided the necessary proof of an intention on the part of any owners in the Skaien chain of title to ever dedicate a portion of the disputed property to the public. Respondent's contention asserting possession of an interest in the property based on common law dedication must therefore fail.

Section 2—202 of the Illinois Highway Code (Ill. Rev. Stat. 1989, ch. 121, par. 1—101 *et seq.*) provides that a public highway may be established if 15 years of public use can be shown. The appellate court of Illinois, fifth district, stated in *People ex rel. Kenney, supra*, at 154 Ill. App. 3d 1097, 507 N.E.2d 1251:

"The requirements necessary to establish a public highway by prescription under the statute are the same as those necessary to establish a private easement by prescription. The use by the public must be adverse, under a claim of right, continuous, and uninterrupted, with the knowledge of the owner but without his consent. *People ex rel. Carson v. Mateyka* (1978), 57 Ill. App. 3d 991, 997-98, 15 Ill.Dec. 125, 129-30, 373 N.E.2d 471, 475-76.)"

As stated before, it appears the northern approach to a prior bridge may have run through the disputed property at one time. Respondent asserts the approach to the bridge was used from 1870 to 1929. However, based on the record before this Court, Respondent has not provided evidence showing continuous and uninterrupted use of an approach and bridge for any 15-year period during that time to establish a public highway. Respondent's contention asserting possession of an interest in the property based on prescription must therefore fail.

Based on the foregoing, we find that the State of Illinois did not acquire any interest in the disputed

159

property in 1977 through the quitclaim deed from Oskar Skaien because Skaien's interest had been previously extinguished by adverse possession by John J. Gordon and his predecessors. We further find that the State of Illinois has failed to prove it had an interest in the disputed property irrespective of the Skaien quitclaim deed based on common-law dedication or prescription that would have prevented John J. Gordon and his predecessors from acquiring the disputed property by adverse possession.