Charles LAWSON, Plaintiff,

v.

CITY OF KANKAKEE, ILLINOIS, a municipal corporation, and Gary Hammond, in his capacity as Superintendent of the Department of Public Works of the City of Kankakee, Defendants.

No. 99–2310.

United States District Court, C.D. Illinois, Danville/Urbana Division.

Jan. 31, 2000.

Charles Ruch, Jr., Kankakee, IL, for plaintiff.

Christopher Bohlen, City of Kankakee Corporate Counsel, Kankakee, IL, for defendants.

## ORDER

McCUSKEY, District Judge.

On December 15, 1999, Plaintiff Charles Lawson filed a Complaint for Declaratory Judgment, Injunctive and Other Relief (# 1). In that complaint, Plaintiff alleges various civil rights violations based on the City of Kankakee's (the "City")[1] enforcement of an ordinance restricting the placement of signs on the City's property. In addition, on January 4, 2000, Plaintiff moved for a temporary restraining order to enjoin the City from enforcing the challenged ordinance. The court elected to treat the motion as one for a preliminary injunction, and heard evidence on January 14 and 21, 2000. For the following reasons, that motion (# 9) is GRANTED.

## BACKGROUND

On January 5, 1998, the City Council of Kankakee declared that the City suffered from an "epidemic of political and commercial signs, flyers and banners posted upon traffic control devices, light poles, telephone poles, fences and terraces without the permission of the owner, occupant or the City of Kankakee." To remedy this epidemic, the City passed an ordinance prohibiting the placement of signs "upon any private or public property without the consent of its owner or occupant." Kankakee, Ill., Ordinance Prohibiting the Unauthorized Placement of Signs 98–02 (January 5, 1998). Violators are subject to a fine and forfeit the illegally-placed sign to the property's owner.

Plaintiff owns several parcels of rental property in the city of Kankakee; at one time, these parcels included two adjoining properties. On June 13, 1997, Mayor Donald Green directed Defendant Gary Hammond ("Hammond"), Director of the City of Kankakee Department of Public Works (the "Department"), to post a sign in front of one of these adjoining properties declaring that property a slum and accusing Plaintiff of refusing to comply with the City's housing code.[2] Plaintiff sold that property on October 27, 1999, but kept the neighboring parcel.

On November 22, 1999, Plaintiff placed a sign in front of the property he still owned. He placed this sign near the City's sign, which remained despite Plaintiff's sale of that property. Plaintiff's sign read: "Mayor Don Green is unfair to landlords, his City sign is an attack on free speech in the 1st Amendment. Call the Mayor at home: 939–2897 and tell him to take down his sign." Both the City's sign and Plaintiff's sign were placed on the area between the sidewalk and the curb, known as the "terrace." The following day, a newspaper reporter contacted Hammond to tell him about the sign. Because the City considers itself the owner of terrace areas, Hammond immediately directed his crew to remove the sign under the ordinance restricting signs posted on public property. Hammond personally supervised the sign's removal.

Plaintiff retrieved the sign several days later, and promptly placed it back on the

1. For the sake of simplicity, the court will refer to all Defendants as "the City."

2. The City's sign is currently the subject of another lawsuit pending before this court against the Mayor and City Attorney Christopher Bohlen. In that suit, Plaintiff alleges that the defendants placed the disparaging sign on his property to retaliate against him for exercising his First Amendment rights.

terrace. The sign remained there until December 3, when Department employees removed it again, along with the City's slum sign on the adjacent terrace. Plaintiff retrieved his sign from the Department, and erected it a third time on December 16. The sign remained standing until December 23, when Department employees removed it once again.

At the hearing, Plaintiff presented evidence that numerous other signs stood on the terraces in front of various properties throughout the City. Some of these signs remained standing through the time of the hearing on Plaintiff's motion. In addition, Plaintiff presented evidence that a sign stood on the terrace in front of the home of one of Hammond's neighbors, and was removed only the day before the hearing. Plaintiff also presented the testimony of Frank Tripodi, a realtor in the Kankakee area. Tripodi testified that the City had never removed any of the realty signs he had placed on the terraces in front of properties he was trying to sell, and that he knew of no instance in which any realtor's sign had been removed. In fact, Tripodi testified, he was not even aware that such a restriction existed until he became involved in this case.

Hammond testified that he is the Superintendent of the City's Department of Public Works. The Department maintains the City's property, and is responsible for removing snow and leaves from the City's 340 miles of streets. As Superintendent, Hammond supervises twenty-three drivers and five mechanics. Two of these drivers constitute the "sign traffic crew," which is assigned to remove any sign posted on City-owned property, including terrace areas. The sign crew was expected to tend to other duties, however, and removing signs was not its first priority. On some occasions, Hammond directly ordered the sign crew to remove a sign he had personally seen on public property. On other occasions, the members of the sign crew removed signs as they noticed them, without a specific order to do so.

Hammond testified that since the ordinance was enacted, the sign crew has removed many different kinds of signs. Many are political signs, but other signs, such as realty and commercial signs, have been taken down as well. Generally, the sign crew removes offending signs as they are erected, but not always. At any given time, the Department has about thirty confiscated signs displaying messages of varying natures. Hammond testified that at the time Plaintiff's signs were removed, the Department's crew was extremely busy with other duties and had fallen behind in removing illegally-placed signs. Hammond admitted, however, that he had never before personally supervised a sign's removal until Plaintiff's sign was first taken down.

## ANALYSIS

Rule 65 of the Federal Rules of Civil Procedure governs preliminary injunctions. A "preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Mazurek v. Armstrong,* 520 U.S. 968, 972, 117 S.Ct. 1865, 138 L.Ed.2d 162 (per curiam) (*quoting* 11A Charles Alan Wright, Arthur R. Miller and Mary Kay Kane, Federal Practice and Procedure § 2948 (2d ed.1995)). An injunction is an equitable remedy warranted only when the plaintiff has no adequate remedy at law, such as monetary damages. *See Morales v. Trans World Airlines, Inc.,* 504 U.S. 374, 381, 112 S.Ct. 2031, 119 L.Ed.2d 157 (1992).

As an initial matter, the movant must demonstrate (1) a " 'better than negligible' chance of succeeding on the merits," and (2) the inadequacy of legal remedies. *Meridian Mut. Ins. Co. v. Meridian Ins. Group, Inc.,* 128 F.3d 1111, 1114–15 (7th Cir.1997) (*quoting International Kennel Club of Chicago, Inc. v. Mighty Star, Inc.,* 846 F.2d 1079 (7th Cir.1988)). If the movant satisfies both of these requirements, the district court proceeds to balance the

harm the injunction would impose on the non-movant against the injury the movant would suffer without the injunction. *Vencor, Inc. v. Webb*, 33 F.3d 840, 845 (7th Cir.1994). Finally, the court must consider the public interest in granting or denying the motion. *See Vencor*, 33 F.3d at 845.

The court therefore first addresses whether Plaintiff has established a likelihood of success on the merits. Plaintiff alleges that the City does not own the terrace, but has mere easement rights. Accordingly, Plaintiff argues, he is not in violation of the ordinance, which prohibits the placement of signs on property only without the owner's permission. Alternatively, Plaintiff argues, even if the City does own the terrace, the ordinance unconstitutionally restricts speech on public property. Finally, Plaintiff asserts, the City has selectively enforced the ordinance against Plaintiff based on his sign's message, which amounts to unconstitutional content-based discrimination.

The court will first address Plaintiff's argument that he, not the City, owns the terrace property. In support of its position that it owns the terrace, the City proferred copies of the City's plats. These plats indicate that terrace areas and their adjoining sidewalks are dedicated to the City. Nevertheless, Plaintiff maintains that he owns that property because the City generally allows residents to maintain the terraces in front of their homes. Based on that, Plaintiff asserts, the City has mere easement rights in these areas, and cannot remove signs posted there by their true owners.

The court finds that Plaintiff has failed to establish a likelihood of success on his claim that he owns the terrace. Plaintiff offers no legal basis for his assertion that he rather than the City owns the terrace. In contrast, Defendants submitted plats delineating those areas as dedicated to the City. These plats were recorded with the Office of the Kankakee County Recorder in 1855 and 1856 respectively.

Under Illinois law, this proves that the City owns the property in fee simple, and Plaintiff has offered nothing to rebut that. 765 Ill.Rev.Stat. § 205/3 (West 1999). Moreover, the City's lack of interference with residents' maintenance of adjoining terraces does not divest the City of ownership. Even if this maintenance went so far as to satisfy the elements of adverse possession, that would not vest ownership of the terraces in the residents, because adverse possession does not run against a governmental body regarding property devoted to public use. *See People ex rel. Kenney v. City of Goreville*, 154 Ill.App.3d 1091, 107 Ill.Dec. 878, 507 N.E.2d 1247, 1251 (1987).

Accordingly, Plaintiff can establish a likelihood of success on the merits only if he can establish that the ordinance is unconstitutional on its face, or that it is being applied in an unconstitutionally discriminatory manner. The court will address the constitutionality of the ordinance on its face first. In doing so, the court must first question whether an ordinance prohibiting the posting of signs on public property burdens any speech. If so, the court must then determine whether the ordinance imposes content neutral or content based restrictions. If the restriction is content neutral, the court then determines whether the ordinance serves any substantial interest of the City. If the City identifies a substantial interest, the court next examines whether the City narrowly tailored the ordinance to further this stated interest. Finally, the court must assess whether the ordinance leaves open ample alternative means for communicating the desired message. *Arlington County Republican Comm. v. Arlington County, Va.*, 983 F.2d 587, 593 (4th Cir.1993) (*citing Clark v. Community for Creative Non-Violence*, 468 U.S. 288, 104 S.Ct. 3065, 82 L.Ed.2d 221 (1984); *United States v. O'Brien*, 391 U.S. 367, 377, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1968)).

Here, it is beyond dispute that the ordinance restricting where residents can post

signs affects speech. As the Ninth Circuit has recognized, "[c]ommunication by signs and posters is virtually pure speech." *Baldwin v. Redwood*, 540 F.2d 1360, 1366 (9th Cir.1976), *cert. denied sub nom. Leipzig v. Baldwin*, 431 U.S. 913, 97 S.Ct. 2173, 53 L.Ed.2d 223 (1977) (footnote omitted). In addition, the court agrees with Plaintiff that the ordinance burdens his speech by preventing him from posting a sign on the terrace in front of his property, which is the same area on which the City posted its sign next door.

■ Because the ordinance restrict speech, the court must next question whether it imposes content neutral or content based restrictions. On its face, the ordinance is content neutral, as it refers to all signs without mention of content and without exceptions for signs expressing particular messages. Under the content neutral test, the court must assess whether the ordinance furthers any substantial governmental interest. In support of its position that the ordinance is a constitutional content-neutral restriction on speech, the City points to the Supreme Court's decision in *Members of City Council of Los Angeles v. Taxpayers for Vincent*, 466 U.S. 789, 104 S.Ct. 2118, 80 L.Ed.2d 772 (1984). In *Vincent*, the city sought to improve its appearance, and consequently enacted an ordinance prohibiting the posting of signs on public property. Based on the evidence presented by the city, the district court specifically found that "the large number of illegally posted signs 'constitute clutter and visual blight,'" and that the ordinance restricting signs furthered the city's goal of reducing that clutter and blight. The Supreme Court agreed, and held that a city could properly prohibit the posting of signs on public property to further legitimate interest, including aesthetics. *Vincent*, 466 U.S. at 805, 104 S.Ct. 2118. In this case, however, the City has so far offered no specific justification for its restriction. It seems to think that this step is not necessary given the court's decision to uphold a similar

ordinance in *Vincent*. But the *Vincent* decision did not relieve the government of its duty to present a legitimate and significant reason before restricting its citizens' speech. Rather, it determined based on the evidence the city presented in that case that the city had satisfied that duty. *Vincent*, 466 U.S. at 794–95, 805, 104 S.Ct. 2118.

Moreover, even if this court were to presume that the City was asserting aesthetics as its justification for the ordinance, the facts of this case would belie that assertion. If the City were so worried that signs on terraces looked bad, it would not have chosen to place a sign there itself. Surely its own sign is no less unattractive than Plaintiff's. Furthermore, as the court discusses at greater length below, Plaintiff presented considerable evidence that the City has not consistently enforced its ordinance against other offenders. In an attempt to explain this lax enforcement, Defendant Hammond testified that enforcing the ordinance was not the Department's priority, given its other duties to keep the streets clear of snow and leaves. Although this explanation might help refute an allegation of selective enforcement, it seriously undermines the City's assertion that it has a substantial interest in keeping signs off terraces. After all, if the City's interest was truly substantial, it would surely pursue its ordinance with more vigor.

But perhaps even more troubling is the unbridled discretion the ordinance apparently vests in City officials. The Supreme Court has held that "a facial challenge lies whenever a licensing law gives a government official or agency substantial power to discriminate based on the content or viewpoint of speech by suppressing disfavored speech or disliked speakers." *City of Lakewood v. Plain Dealer Publ'g Co.*, 486 U.S. 750, 759, 108 S.Ct. 2138, 100 L.Ed.2d 771 (1988). In *City of Lakewood*, the Court found it unconstitutional to grant an official "unfettered discretion to deny a permit application" because any

"law or policy permitting communication in a certain manner for some but not for others raises the specter of content and viewpoint censorship." *City of Lakewood*, 486 U.S. at 763, 108 S.Ct. 2138.

■ The langauge of the ordinance in this case restricts the posting of signs on "private or public property without the consent of the owner or occupant." Thus, although the ordinance does not require a "permit" or "license," it does require "consent" from City, which owns the property on which Plaintiff seeks to post his sign. Yet the ordinance does not explain how one goes about getting such consent; nor does it set forth guidelines to ensure that the City will not give or withhold its consent in an effort to accommodate or censor particular viewpoints. On its face, it grants unnamed City officials unbridled discretion to allow some signs to remain while authorizing the removal of others. Even if the City could properly limit its residents' posting of signs on terraces in the first place, it cannot subject those residents to the unchecked whims of its officials. *Compare Saia v. New York*, 334 U.S. 558, 68 S.Ct. 1148, 92 L.Ed. 1574 (1948) (overturning ordinance prohibiting use of soundtrucks without permit where official was vested with unbridled discretion in issuing permits) *with Kovacs v. Cooper*, 336 U.S. 77, 69 S.Ct. 448, 93 L.Ed. 513 (1949) (upholding ordinance prohibiting use of soundtrucks altogether). Because the City's sign ordinance fails to provide even the semblance of "narrow, objective, and definite standards to guide" its decision to consent, it is invalid as an unconstitutional prior restraint. *See Diamond v. City of Taft*, 29 F.Supp.2d 633, 650 (E.D.Cal.1998) (*citing Shuttlesworth*, 394 U.S. at 151, 89 S.Ct. 935).

In defense of its ordinance, the City points out that it does not prohibit Plaintiff from placing a sign on his own property; it merely prohibits him from placing it a few feet away on the City-owned terrace. That argument, however, ignores several important steps in the analysis. If the ordinance were an otherwise valid restriction on speech, and if the City had asserted a legitimate interest at stake, the court would then look to the existence of alternative channels of communication. In that case, the court would consider the availability of alternative channels to determine whether the City was pursuing its objective in a way that burdened speech no more than necessary. In this case, however, the City has failed to articulate a legitimate interest at stake; moreover, the ordinance impermissibly vests unfettered discretion in government officials. Thus, the availability of other means of communication will not save the City's otherwise unconstitutional ordinance.

■ Moreover, the court finds that regardless of whether the ordinance is facially invalid, Plaintiff has shown a better than negligible chance of succeeding on his claim that the City has selectively enforced the ordinance against him because of the sign's political message. *See Libra Books, Inc. v. City of Milwaukee*, 818 F.Supp. 263, 267 (E.D.Wis.1993). In support of this claim, Plaintiff presented numerous examples of situations in which the City has failed to enforce the ordinance by allowing signs to remain on terraces. For example, several realty signs remained on terraces for many weeks around the time Plaintiff's own sign was swiftly removed. In addition, signs designating churches remained on City-owned terraces without interference, as did signs reserving doctor's parking spots on terraces in front of medical offices.

In response to Plaintiff's claim of selective enforcement, Defendant Hammond testified that the sign crew removes offending signs when the Department learns about specific violations and when time permits. Moreover, he asserted, it has removed all kinds of signs, not just those with political messages. He admitted that enforcement has been sporadic at best, but insisted that it has never been motivated by the content of a particular sign. Hammond explained that enforcement has

simply been a low priority for the Department, which has many other responsibilities besides rounding up offending signs.

The court had the opportunity to observe the manner and demeanor of this witness as he testified and found his credibility questionable. He stated that the content of Plaintiff's sign had nothing to do with his swift enforcement of the ordinance, but could offer no reasonable explanation for allowing his own neighbor to keep a sign on the terrace in front of her house until the night before the hearing. Moreover, the court cannot ignore what prompted Hammond's personal attention to Plaintiff's sign, particularly given his testimony that enforcement of the sign ordinance was normally a low priority. Namely, Hammond admitted that a call from a local newspaper reporter about the inflammatory sign induced him to oversee personally the sign's removal that very day. Curiously, before that instance, Hammond had never gone to the site of an offending to sign to supervise directly its immediate removal. Although sloppy enforcement does not necessarily equal unconstitutionally selective enforcement, the court finds it hard to believe that the sensational nature of Plaintiff's sign did not trigger the unusually swift enforcement in this case.

Moreover, the court found the testimony of local realtor Frank Tripodi particularly compelling. Tripodi testified that he had on several occasions posted realty signs on terrace areas in front of houses he was trying to sell within the City of Kankakee. Yet the Department had never confiscated one of Tripodi's signs. Nor had Tripodi even heard of the ordinance, which at the time of his testimony had been in effect for over two years. Tripodi's testimony leads this court to conclude that Plaintiff's sign probably would have remained on the terrace just like one of Tripodi's realty signs had it not expressed an inflammatory sentiment about the mayor.

Accordingly, Plaintiff has established a likelihood of success on the merits of his constitutional claim. Having done so, Plaintiff has also established that he will suffer irreparable injury without an injuction because "the loss of First Amendment freedoms for even minimal periods of time unquestionably constitutes irreparable injury." *Elrod v. Burns,* 427 U.S. 347, 373, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976). In addition, the court finds that the City has not put forth sufficient evidence to justify restricting the exercise of Plaintiff's First Amendment rights in its effort to address the concerns that led it to enact the ordinance. Consequently, the City has failed to demonstrate a level of harm that sufficiently outweighs the harm to Plaintiff should a preliminary injunction not issue.

Finally, the public interest also favors a preliminary injunction. The First Amendment reflects a "profound national commitment" to the principle that debate on public issues should be uninhibited and robust, and the Supreme Court has consistently commented on the central importance of protecting speech on public issues. *Boos v. Barry,* 485 U.S. 312, 318, 108 S.Ct. 1157, 99 L.Ed.2d 333 (1988) (*citing New York Times Co. v. Sullivan,* 376 U.S. 254, 270, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964)). Allowing Plaintiff to continue to comment on the City's policy of posting signs criticizing property owners, at least while this suit is pending, serves that purpose.

As a final matter, the court has considered whether Plaintiff should be required to post a security bond under Rule 65(c) of the Federal Rules of Civil Procedure. *See Reinders Bros., Inc. v. Rain Bird E. Sales Corp.,* 627 F.2d 44 (7th Cir.1980). The City made no showing of any harm likely to befall them if a preliminary injunction issues; nor did it request that Plaintiff be ordered to post a bond. To order Plaintiff to give security is therefore unnecessary and no bond is required. *See Scherr v. Volpe,* 466 F.2d 1027 (7th Cir.1972) (observing that requiring security rests within the discretion of the district court).

Accordingly, Plaintiff's Motion for a Preliminary Injunction (# 9) is GRANTED. Pending resolution of this litigation, Plaintiff may post the sign at issue on the terrace in front of his property.